**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 15 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

RONALD J. CRUZ, individually and as
personal representative of Thomas C.
Cruz,

     Plaintiff-Appellee,

v.

CITY OF LARAMIE, WYOMING;
BONNIE NOEL, individually and in her
official capacity as Officer, Laramie
Police Department; RICHARD D.
MICHEL, individually and in his official
capacity as Officer, Laramie Police
Department; TROY JENSEN, individually
and in his official capacity as Officer,
Laramie Police Department; BEN
FRITZEN, individually and in his official
capacity as Officer, Laramie Police
Department,

     Defendants-Appellants,

and

BILL WARE, individually and in his
official capacity as Chief of Police,
Laramie Police Department,

     Defendant.

Nos. 99-8045, 99-8049 & 99-8050

(D.C. No. 98-CV-65-D)
(D. Wyoming)

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 98-CV-65-D)**

Vonde M. Smith (Kent W. Spence with her on the brief) of Lawyers & Advocates for Wyoming, Jackson, Wyoming, for Plaintiff-Appellee.

Karen A. Byrne, Byrne Law Offices, Cheyenne, Wyoming for Defendant-Appellant City of Laramie; Elizabeth Zerga of Herschler, Freudenthal, Salzburg, Bonds & Zerga, Cheyenne, Wyoming for Defendant-Appellants Bonnie Noel, Richard D. Michel, Troy Jensen and Ben Fritzen.

Before **BALDOCK**, **LUCERO**, and **POLITZ**,[1] Circuit Judges.

**POLITZ**, Circuit Judge.

The City of Laramie, Wyoming, and four of its police officers appeal the denial of their motions for summary judgment. For the reasons assigned we affirm in part and reverse in part.

## BACKGROUND

On June 10, 1996, in late afternoon, the Laramie Police Department received a complaint that a man, later identified as Thomas C. Cruz, was running around naked. Officer Troy Jensen, the first to arrive on the scene, found the naked Cruz on an exterior landing of an apartment building, jumping up and down, yelling, and kicking his legs in

---

[1] The Honorable Henry A. Politz, United States Court of Appeals for the Fifth Circuit, sitting by designation.

the air. Officer Bonnie Noel then arrived and, immediately upon seeing Cruz, called for an ambulance. A few seconds later Officer Richard Michel reached the scene. The officers sought to calm Cruz and tried to persuade him to come down the steps. Their efforts initially were not successful. After several minutes, however, Cruz descended and approached the officers who met him at the bottom of the steps with their batons drawn. Cruz attempted to go past the officers. During the ensuing struggle the officers wrestled Cruz to the ground and handcuffed him face down. Cruz continued to yell and flail about. The officers asked Cruz what kind of drugs he had taken but received no response.

Officer Ben Fritzen then arrived and, after assessing the situation, applied a nylon restraint around Cruz's ankles to abate the kicking. The officers fastened the ankle restraint to the handcuffs with a metal clip. The parties dispute the resulting distance between Cruz's ankles and wrists. The district court found sufficient evidence in the record to support an inference that Cruz was "hog-tied" because the separation was one foot or less. If that distance were two feet or more, it appears that it would have been deemed a "hobble restraint." Appellee contends that the terms are interchangeable, both referring to the technique whereby officers' fasten an individuals hands and feet together behind the individual's back.

Shortly after Officer Fritzen applied the restraint, Officer Michel turned Cruz's head to check the reaction of his pupils to sunlight. Cruz had calmed markedly after officers completed the arm-leg restraint. Just before the ambulance arrived, Officer Noel

-3-

noticed that Cruz's face had blanched. The restraint was removed. Immediately upon reaching the scene the ambulance emergency team began CPR. Cruz was pronounced dead on arrival at the hospital. Autopsy results showed a large amount of cocaine in his system.

Ronald Cruz, the decedent's brother, brought the instant action against the officers, individually and in their official capacities, the City of Laramie, and Chief of Police Bill Ware, both individually and in his official capacity. The action invokes 42 U.S.C. § 1983, and advances a state law negligence claim under the Wyoming Governmental Claims Act. The affidavits of experts provide two different causes of death, one concluded that Cruz's position while on the ground contributed to his death, the other concluded that his death resulted solely from cocaine abuse. Defendant police officers' and the City of Laramie's motions for summary judgment were denied and these appeals followed.

## ANALYSIS

### A. Qualified Immunity For Fourth Amendment Claim

### 1. Jurisdiction

Before reaching the merits, we must first briefly address our appellate jurisdiction. After the denial of their motion, the officers appealed. Thereafter, the City of Laramie sought a reconsideration of the initial order of denial. The trial court then issued a corrective order, modifying the factual basis for its original order, but again denying

-4-

qualified immunity to the officers. The officers appealed the corrective order. The City of Laramie timely appealed both orders. We consolidated the appeals.

Typically, orders denying qualified immunity before trial are appealable only to the extent they resolve issues of law.[2] The issue of jurisdiction over such appeals, in the summary judgment setting, has been the subject of significant controversy, one addressed recently both by the Supreme Court and this circuit. The predicates for determining whether review is appropriate are intertwined with the qualified immunity analysis, requiring application of a two-part test. A plaintiff bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right.[3]

### 2.       Constitutional Violation

In applying the qualified immunity standard, the Supreme Court has directed that appellate courts may not review a district court's resolution of disputed facts, but may review only purely legal determinations.[4] Consistent therewith, we have noted that the scope of an interlocutory appeal from a denial of qualified immunity is limited to:

> "purely legal" challenges to the district court's ruling on

---

[2] See Behrens v. Pelletier, 516 U.S. 299, 313 (1996); Johnson v. Jones, 515 U.S. 304, 312-14 (1995); Foote v. Spiegel, 118 F.3d 1416, 1422 (10th Cir. 1997).

[3] Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995).

[4] Johnson, 515 U.S. at 313.

whether a plaintiff's legal rights were clearly established, and cannot include attacks on the court's "evidence sufficiency" determinations about whether there are genuine disputes of fact. That is, we can only review whether the district court "mistakenly identified clearly established law . . .given [] the facts that the district court assumed when it denied summary judgment for that (purely legal) reason."[5]

Accordingly, we may review the trial court's ruling as to whether the law was clearly established, but we lack authority "to the extent that Defendants [ ] seek interlocutory review of the district court's ruling that genuine disputes of fact precluded summary judgment based on qualified immunity."[6]

Applying that rubric herein, the first part of the trial court's decision found sufficient facts to support a claimed violation of appellee's fourth amendment rights. We therefore lack jurisdiction over the portion of the appealed decision precluding summary judgment based on disputed facts relating to a constitutional violation.

### 3. Clearly Established Law

The district court also found, in applying the second part of the test, that the constitutional right allegedly violated was clearly established and that defendants acted unreasonably. This portion of the ruling decides an issue of law over which we have interlocutory appellate jurisdiction.

---

[5] Sevier v. City of Lawrence, Kansas, 60 F.3d 695, 700 (10th Cir. 1995) (quoting Johnson v. Jones, 515 U.S. 304, – (1995)).

[6] Mick v. Brewer, 76 F.3d 1127, 1133 (10th Cir. 1996).

We review *de novo* the decision that the decedent's rights were clearly established.[7] "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[8] The plaintiff is not required to show, however, that the very act in question previously was held unlawful in order to establish an absence of qualified immunity.[9]

The district court correctly noted that the issue at bar involves excessive force under the fourth amendment. "[C]laims that law enforcement officials have used excessive force in the course of an arrest, investigatory stop or other 'seizure' of a free citizen are most properly characterized as involving the protection of the Fourth Amendment."[10] In Mick v. Brewer, we upheld the denial of summary judgment, concluding that "the district court did not err by ruling that the law governing excessive force cases was clearly established on June 18, 1992."[11] We therein held that the fourth amendment "reasonableness" inquiry turned on whether the officers' actions were

---

[7] Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir. 1995).

[8] Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).

[9] Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citing Mitchell v. Forsyth, 472 U.S. 511, 535 n. 12 (1985)).

[10] Graham v. Connor, 490 U.S. 386, 394-95 (1989).

[11] Mick, 76 F.3d at 1136.

"objectively reasonable" in light of the facts and circumstances confronting them, without regard for their underlying intent or motivation.[12]  While Mick unqualifiedly denotes that objectively unreasonable actions by officers constitute a violation of an individual's constitutional rights, it remains for us to determine whether the contours of this fourth amendment right were sufficiently clear that  reasonable persons in the officers' position would have known their conduct violated that right.[13]

The conduct at issue involves the tying of the decedent's arms behind his back, binding his ankles together, securing his ankles to his wrists, and then placing him face down on the ground.  We note that while sister circuits may characterize the hog-tie restraint somewhat differently, we understand such to involve the binding of the ankles to the wrists, behind the back, with 12 inches or less of separation.[14]  We have not heretofore ruled on the validity of this type of restraint.   We do not reach the question whether all hog-tie restraints constitute a constitutional violation *per se*, but hold that officers may not apply this technique when an individual's diminished capacity is apparent.  This diminished capacity might result from severe intoxication, the influence of controlled

---

[12]  Id. at 1135-36 (citing Graham, 490 U.S. at 397).

[13]  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

[14]  Appellants describe Cruz's position as "hobbled" rather than "hog-tied"; the officers say that the distance between Cruz's hands and feet was approximately two feet.  The district court found sufficient evidence to support appellee's contention that the distance was 12 inches or less.

substances, a discernible mental condition, or any other condition, apparent to the officers at the time, which would make the application of a hog-tie restraint likely to result in any significant risk to the individual's health or well-being. In such situations, an individual's condition mandates the use of less restrictive means for physical restraint.

A review of the known dangers of the hog-tie restraint supports this position. Initially, case law informs of tragic examples of positional asphyxia stemming from the hog-tie restraint, especially in instances involving individuals of diminished capacity. In Gutierrez v. San Antonio, discussed below, the Fifth Circuit found that a 1992 San Diego Police Study presented sufficient evidence that hog-tying may create a substantial risk of death or serious bodily injury.[15] In Johnson v. City of Cincinnati, the Southern District of Ohio found sufficient information existed in the law enforcement community to put the authorities on notice that positional asphyxia was a problem nationwide.[16] In the civil arena, a Michigan jury awarded a significant verdict to the family of a mentally ill patient who died after officers applied a "kick–stop restraint" analogous to a hog-tie.[17] We recognize that in Price v. San Diego,[18] the district court rejected the validity of a popular study connecting positional asphyxia with placement in a prone restraint. Instead, the

---

[15] 139 F.3d 441 (5th Cir. 1998) (discussing hog-tying in context of whether officers used "deadly force").

[16] 39 F. Supp. 2d 1013 (S.D. Ohio 1999).

[17] Swans v. City of Lansing, 65 F. Supp. 2d 625 (W.D. Mich. 1998).

[18] 990 F. Supp. 1230 (S.D. Cal. 1998).

court relied on another study, one by appellants' expert herein, concluding that hog-tying does not result in positional asphyxia. That study, however, is not persuasive herein for it focused on healthy adult males. Our holding today relates to individuals with an apparent and discernible diminished capacity.[19]

In addition to the case law highlighting problems associated with the hog-tie restraint, appellee provided the district court with numerous articles and other materials discussing "sudden custody death syndrome" and noting the relationship between improper restraints and positional asphyxia. The articles detail the breathing problems created by pressure on the back and placement in a prone position, especially when an individual is in a state of "excited delirium." These breathing problems lead to asphyxiation. The materials provided to the district court include police handbooks, Justice Department symposia, various journals and periodicals, and newspaper articles detailing deaths of individuals while in custody. Given the extent of the case law, and the "legally-related" literature available to law enforcement personnel detailing the serious dangers involved in application of the hog-tie restraint, it is apparent that officers should use much caution in applying the hog-tie restraint. In those instances in which it may be appropriate, such restraint should be used with great care and continual observation of the well being of the subject.

---

[19] See Johnson, 39 F. Supp. 2d at 1017 (noting that the subject study was "restricted to healthy subjects" and therefore did not affect the admissibility of testimony regarding "the theory of positional asphyxia").

Turning to the case at bar, the decedent's diminished capacity was apparent to the officers from the moment they arrived on the scene. Officer Jensen arrived first, and upon seeing Cruz naked and yelling on the stairs, called for back up. Officer Noel arrived about 30 seconds later, saw Cruz on the stairway and Jenson below, "and immediately radioed dispatch requesting an ambulance and additional back-up." Cruz was yelling continuously about swarming insects, and he was swatting at invisible objects. After Officer Fritzen applied the hand-ankle restraint, Officer Michel opened Cruz's eyelid and observed that the pupil was constricted but did not constrict further in response to sunlight. The officers surmised that Cruz was on some type of drug. It seems beyond peradventure that Cruz's diminished capacity was apparent to them both before and after they applied the restraint. We conclude and hold that the fourth amendment protection against excessive force includes the protection of an individual's right to be free from a hog-tie restraint in situations such as the one confronting the officers herein.

While the use of a hog-tie restraint in this case falls within the rule we announce today, we cannot say, however, that a rule prohibiting such a restraint in this situation was "clearly established" at the time of this unfortunate incident. The decisions from other circuit and district courts fall shy of the mandated "clearly established weight of authority from other courts."[20] We find informative the Fifth Circuit's reasoning in Gutierrez v.

---

[20] Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).

City of San Antonio,[21] involving a man placed in a hog-tie restraint who died in the back seat of a patrol car while officers transported him to the hospital.[22] The court denied qualified immunity because plaintiff demonstrated material disputes of fact relating to the officers' knowledge of decedent's drug use, whether officers' placed decedent face-down in their squad car, and whether the San Antonio Police Department warned its officers of the possible dangers of hog-tying prior to November 1994.[23] While the facts in Gutierrez are similar to those at bar, this ruling does not suffice to satisfy the strict requirements governing qualified immunity. It must be viewed in the total jurisprudential setting which includes the Eighth Circuit decision upholding the use of what it called a "hobble" restraint,[24] and the Southern District of California opining that "the hog-tie restraint in and of itself does not constitute excessive force . . . ."[25] We perforce therefore cannot say

---

[21] 139 F.3d 441 (5th Cir. 1998).

[22] The court described the restraint and the officers' conduct as follows: "Walters placed the loop around Gutierrez's feet, and Solis linked the clasp around the hand-cuffs, drawing Gutierrez's legs backward at a 90-degree angle in an "L" shape, thereby 'hog-tying' him." Id. at 443.

[23] Id.

[24] See Mayard v. Hopwood, 105 F.3d 1226 (8th Cir. 1997) (finding use of a "hobble" restraint fastening individuals hands and feet objectively reasonable where she resisted being placed in a police car).

[25] Price v. San Diego, 990 F. Supp. 1230 (S.D. Cal. 1998) (rejecting a previous study showing dangers of hog-tying and noting that a new study "has shown the dangers to be fictitious, which obviates the need for precautions").

that at the time of this tragic incident the decedent had a clearly established right to be free from a hog-tie restraint under the circumstances. Accordingly, we must reverse the district court's denial of summary judgment on plaintiff's fourth amendment claims.

**B.     Officers Immunity for State Law Claims**

The district court found genuine issues of material fact respecting the claim of immunity under state law for plaintiff's tort claims. The court found that while the officers were acting within the scope of their duties, in good faith, and that those duties were discretionary rather than ministerial, their conduct was unreasonable under the circumstances. The court observed that all four factors outlined by the Wyoming Supreme Court in Kanzler v. Renner[23] must be met and, because defendants acted unreasonably, their claim for immunity under state law must fail. While the federal qualified immunity standard focuses on whether a right was clearly established such that the officers would know their conduct violated that right, state law immunity in Wyoming requires that the officers' conduct be reasonable. In finding that the fourth amendment protects against application of a hog-tie restraint in this situation, we necessarily conclude that the officers acted unreasonably.[24] State law immunity in Wyoming does not require

---

[23]  937 P.2d 1337, 1344 (Wyo. 1997) (holding that immunity for police officers requires that officers be (1) acting within the scope of assigned duties; (2) in good faith; (3) reasonably under the circumstances; and (4) that the officers' acts were discretionary and not merely operational or ministerial duties).

[24]  Mick v. Brewer, 76 F.3d 1134 (10th Cir. 1996) (holding that fourth amendment inquiry involves determination as to whether an officer's conduct was

that a right be clearly established. The district court found the officers' conduct to be unreasonable and we find no error in this assessment. We therefore affirm its denial of summary judgment on the claim of state law immunity on the negligence claims.

### C. Denial of Summary Judgment For City of Laramie

The district court found sufficient evidence to deny the City of Laramie's Motion for Summary Judgment as to the plaintiff's claim of its failure to train adequately the individual officers.

Initially, we note that while the ruling denying summary judgment to the City is not independently appealable, we may exercise pendent appellate jurisdiction under Swint v. Chambers County Commission.[25] The Swint court held that pendent appellate jurisdiction allows review of an otherwise nonappealable decision that is "inextricably intertwined" with an appealable decision.[26] That situation exists here because plaintiff's claim of inadequate training relates directly to the objective reasonableness of the officers' conduct, the issue involved in the appealable order. We therefore may consider whether the district court erred in denying the City's motion.

We may grant summary judgment "if the pleadings on file, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

_____

"objectively reasonable").

[25] 514 U.S. 35 (1995).

[26] Id. at 50-51.

-14-

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[27] There is no genuine issue of material fact if, based on the evidence in the record, no reasonable jury could return a verdict for the non-moving party.[28]

Generally, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[29] With respect to a showing of "deliberate indifference," the district court determined that material issues of fact precluded summary judgment. The court cited evidence that the City failed to train its officers on the use of hobble restraints and that the City put such restraints in its police cars. The court also noted that high ranking officials were aware of positional asphyxia attributable to hobble restraints and of a doctor's report stating that "deaths in police custody with hog-tie restraint[s] have been reported in medical literature a number of times." The district court found that genuine issues of material fact were in dispute. The denial of summary judgment to the City therefore was appropriate.

The appealed rulings therefore are REVERSED in part and AFFIRMED in part consistent herewith.

---

[27] FED. R. CIV. P. 56(c).

[28] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52, 255 (1986).

[29] City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989).