**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 16 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ESTATE OF LUIS MCINTIRE, JR., by
Louis McIntire, personal representative;
MARIA MCINTIRE and LOUIS
MCINTIRE, as survivors of Luis
McIntire, Jr.,

        Plaintiffs - Appellees,

    v.

CITY OF BOULDER; TOBIAS M.
CHURCH; DAVID FIKE,

        Defendants,

    and

SGT. ROBERT SULLENBERGER;
OFFICER SCOTT ADAMS; OFFICER
DAN JOHNSON,

        Defendants - Appellants.

No. 01-1560
(D.C. No. 98-S-1368)
(D. Colorado)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **PORFILIO**, and **O'BRIEN**, Circuit Judges.

---

    [*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This is an appeal by Sargent Robert Sullenberger, Scott Adams, and Dan Johnson, police officers of the city of Boulder, Colorado (Defendants), from a denial of their motion for summary judgment based on qualified immunity. Louis McIntire, personal representative of the Estate of his son, Luis McIntire, Jr., and Louis and Maria McIntire, as survivors (Plaintiffs), contend we have no jurisdiction because the district court held there are disputed issues of material fact on the reasonableness of Defendants' actions. Defendants respond the only issue on appeal is whether it was clearly established at the time of the incident their conduct violated the decedent's constitutional rights. Therefore, they assert, we have jurisdiction. Defendants point out, for the purpose of this appeal, they have admitted the operative facts so there are no disputed *historical* facts.

Plaintiffs contend, however, they are not litigating only the facts conceded by Defendants; therefore, they urge we should not put them "in a box" by restricting our view of their claims. After reviewing the record, we believe Plaintiffs' argument is based upon a blurring of the facts in evidence which our review will not support.

We agree with Defendants the only issue on appeal is one of law; therefore, we have jurisdiction. *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996); *Foote v. Spiegel*, 118 F.3d 1416, 1422 (10th Cir. 1997). The mere fact the trial court found the existence of factual disputes does not preclude appellate jurisdiction. *Behren*s, 516 U.S. at 312-313; *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001). Therefore, we shall proceed to the merits of the appeal.

Defendants' stipulation regarding the operative facts of the case should simplify consideration of the legal issue. Yet, strong advocacy by Plaintiffs' counsel has resulted in a less than clear understanding of their case. To refocus Plaintiffs' underlying claims, we turn to the pre-trial order for a more precise statement of the issue:

> The Plaintiffs are the Estate of Luis McIntire, Jr. by Louis McIntire, personal representative on the claim of violation of civil rights . . . Plaintiffs claim that on August 3, 1997, Luis McIntire was viciously assaulted by [Defendants] and persons under their direction, held in a prone position, sprayed with mace, handcuffed behind his back, had his feet tied together and forcefully attached to his handcuffs all while compressive pressure was being placed on him causing him to asphyxiate and die. It is the claim of the Plaintiffs that Defendant Police Officers Robert Sullenberger, Scott Adams and Dan Johnson directly participated and directed others to use excessive force against Luis McIntire, which force exceeded constitutional limitations depriving Luis McIntire of any freedom of movement, and resulted in the death of Luis McIntire.
>
> * * *
>
> The actions of the police officers violated Luis McIntire's constitutional right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure of his person and to be free from the use of excessive, unreasonable and unjustified force against his person. This Constitutional violation resulted in physical pain and suffering, emotional trauma and suffering and, ultimately, in the loss of life.

Plaintiffs ardently contend this case involves more than whether Defendants' use of a hog-tie restraint deprived Mr. McIntire, Jr., of his Fourth Amendment right. Although, they point to other facts, the facts they rely upon are not supported by the record.

In our *de novo* review of this case, we are constrained to examine each of the Plaintiffs' contentions in light of the record before us. 252 F.3d at 1127. Plaintiffs argue

the constitutional permissibility of the hog-tie truss employed by Defendants is not the only key to the outcome because of the egregiousness of the Defendants' entire course of conduct. For example, they contend, "the allegations against Luis McIntire [which led up to his restraint] were of minor severity: he was intoxicated and caused a disturbance at a club." In fact, Mr. McIntire, Jr., was removed from the club because he was alleged to have committed a sexual assault on a woman patron and to have struck a male patron. (Event Security Guard James Monaghan, Depo. p. 30, lines 1-3).

Plaintiffs next state, "When Defendants arrived on the scene they were not even aware of these minor allegations." In fact, Defendant Officer Scott Adams testified to the contrary. He said when he arrived on the scene, he did not have time to ask the event security officers what was going on because he immediately became involved in assisting them. Nonetheless, while he was trying to get Mr. McIntire, Jr.'s left arm under control, Officer Adams testified one of the event security guards "mentioned something about a sex assault, and this guy had punched someone else, assaulted somebody else. And that's why he was being restrained." (Officer Scott Adams, Depo. p. 61, lines 1-15). "I got a brief synopsis that there was a sex assault inside and that he had punched someone else inside on the way out." (*Id.*, at 61-62, lines 23-1).

Given the testimony of Event Security Guard James Monaghan and Officer Adams, a fair recital of the record makes plain Mr. McIntire, Jr.'s activities cannot be minimized as a mere "disturbance." At the time Defendants arrived on the scene, Mr.

McIntire, Jr. was suspected of criminal behavior. Moreover, the facts underlying those suspicions were made evident to Defendants very shortly after they arrived. While not critical to the resolution of the ultimate legal issue before us, these circumstances certainly cast a light upon Defendants' actions different from the one shed by Plaintiffs.

Defendants argue at the time of this incident the use of the hog-tie restraint was not declared constitutionally deficient in the Tenth Circuit until we decided *Cruz v. City of Laramie Wyo.*, 239 F.3d 1183 (10th Cir. 2001); thus, the unreasonableness of their acts was not clearly established. Plaintiffs suggest, however, there are "additional factors" that distinguish this case from *Cruz*. Additional difficulties are present with some of Plaintiffs' citation of those other actions which Plaintiffs maintain take this case out of the realm of qualified immunity.

For example, Plaintiffs claim Defendants "direct[ed] security guards to remain on Luis McIntire's back while Defendants attempted to hog-tie him." Yet, Plaintiffs do not direct us to any part of the record supporting this contention.

Plaintiffs cite Appellee's Supplemental Appendix containing the deposition of Event Security Guard Brian Monaghan at page 62, lines 11-18; and the deposition of Defendant Officer Dan Johnson at page 32, lines 6-10, for the proposition that Defendants "instructed the event security guards to remain on Luis McIntire's back exerting pressure while Defendants attempted to hog-tie him." There is no testimony of that kind at these places in the record. In fact, Officer Johnson testified:

Q: When you were back with Officer Adams and attempting to put the hobble on, what were the security personnel doing?

A. There was one person that was on [Mr. McIntire's] upper torso just coming off. There was one person across the back, or I should say the bottom region, the thigh region. There was one person on the lower part of the legs.

Q. Okay. Now they were there when you arrived?

A: When I was walking up, correct.

Q: What about when you were trying to put the hobble on?

A: I directed the person from the lower part of the legs to move out away from there, so I could attach the hobbles. I knew the person that was to the left of me on the lower part of the thighs or torso, or the bottom area was still there trying to hold the lower extremities down, assisting. Officer Adams was trying to get a hobble undone while I was hobbling – trying to get a second hobble.

Q: Now, I think you said the person on the upper torso was just coming off?

A: I believe so.

(Officer Dan Johnson Depo. p. 32 -33, lines 3-2.)

In addition, though not cited by Plaintiffs, there is Sgt. Sullenberger's testimony. When asked by Plaintiffs' counsel whether he knew if any of the event security personnel had "gotten off" [Mr. McIntire's] torso, Sgt. Sullenberger responded: "When we got him handcuffed, then security got off his torso." The record also makes plain Defendants did not attempt to hog-tie Mr. McIntire, Jr. until *after* they had handcuffed him.

Again, a fair reading of the portions of the record cited and relied upon by Plaintiffs simply does not support their contentions. In particular, there is no testimony that the Defendants *directed* the event security guards to remain on Mr. McIntire, Jr.'s back while Defendants attempted to hog-tie him. Indeed, the testimony indicates the event security

guards were not a part of the hog-tying process. Moreover, during the hog-tying, no one was on Mr. McIntire, Jr.'s back.

Plaintiffs also posit Defendants "repeatedly compress[ed] Luis McIntire's chest into the ground while attempting to hog-tie him." In support, they cite testimony of Event Security Guard James Monaghan and Officer Adams. Our reading of those citations discloses no testimony by either deponent remotely relating to compressing Mr. McIntire, Jr.'s chest at any time.

It may be there are other portions of the record that will support Plaintiffs' arguments, and the citations they furnished were given in error. Nonetheless, the responsibility falls upon counsel to comply with our local rules and furnish appropriate citations to the record. It is not the responsibility of the court to search the record to find justification for representations made in the briefs. **Boughton v. Cotter Corp**., 65 F.3d 823, 831 (10th Cir. 1995); **Gilbert v. Shalala** 45 F.3d 1391, 1395 (10th Cir. 1995). We shall not do so in this case.[1]

Moreover, throughout their presentation, Plaintiffs have intermingled the independent acts of the event security guards, both before and after Defendants arrived,

---

[1] Unfortunately, these are not the only discrepancies between assertions made in the Plaintiffs' brief and the contents of the record cited in the arguments. Indeed, we could not substantiate the majority of the contentions made on pages 6 through 8 of the brief.

with those acts of the Defendants. The result makes it appear Defendants were solely responsible for the death of Mr. McIntire, Jr. That is not so.

In short, we must conclude there are no "additional factors" that distinguish this case from *Cruz*. Our resolution of the appeal, therefore, must rest upon application of that authority.

Doing so is justified not only by the state of the record, but also by the claims of the Plaintiffs. The substance of the constitutional claim is Defendants' alleged unreasonable acts which resulted in Mr. McIntire, Jr.'s death by asphyxiation. From the record, we understand the county coroner determined the cause of this death was "cardiopulmonary arrest due to positional asphyxia associated with physical restraint and multiple drug ingestion." The coroner explained, "in a situation where an individual is restrained in the manner that this individual was restrained, [it] tends to further hinder the execution of the diaphram and the ability to inhale and exhale." He noted, however, that the cocaine and LSD in Mr. McIntire, Jr.'s system were a "contributing" cause of his death. (Apt. App. 75-76). Finally, Plaintiffs admit their expert opined that although Mr. McIntire, Jr.'s asphyxia began when event security guards restrained him and he was pepper sprayed, "[t]he hypoxia became fatal when Defendants repeatedly attempted to, and finally did, hog-tie him."

Plainly, then, but for the trussing, the presumption must be Mr. McIntire, Jr. would not have expired and Plaintiffs' claim arising from his death would not exist. We, therefore, focus upon the constitutional propriety of the hog-tie restraint.

We hasten to note that until we decided *Cruz*, in 2001, that issue was unresolved in the Tenth Circuit. Thus, the district court did not have the benefit of our holding when it ruled in this case. Nonetheless, we believe the result is correct, and Defendants are entitled to qualified immunity. Despite Plaintiffs' arguments, we have consistently held it is not clearly established a particular act is constitutionally impermissible until decided either by the United States Supreme Court or this court. *Roska v. Peterson*, 304 F.3d 982, 995 (10th Cir. 2002). Because the hog-tie restraint had not been ruled unconstitutional by either court at the time Defendants acted, their conduct is immunized. *Malley v. Briggs* 475 U.S. 335, 341 (10th Cir. 1986)

Judgement **REVERSED WITH INSTRUCTIONS** to enter an order granting summary judgment to Defendants.


ENTERED FOR THE COURT


John C. Porfilio
Senior Circuit Judge