**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3146
_____

MEGAN GUNTER, Administratrix of the Estate of Albert Gunter, Decedent;
LARRY GUNTER, JR.

v.

THE TOWNSHIP OF LUMBERTON; BURLINGTON COUNTY;
BURLINGTON COUNTY POLICE ACADEMY; DOUGLAS W. LEMYRE, Ptl.;
ROBERT J. SLOCUM, Sgt.; PAUL M. CRAIG, Cpl.; RONALD J. SANNA, Ptl.;
BRIAN H. NORCROSS, Ptl.

Megan Gunter,

Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 1-07-cv-04839)
District Judge: Noel L. Hillman
_____

Submitted Under Third Circuit LAR 34.1(a)
July 12, 2013
_____

Before: GREENAWAY, JR., SHWARTZ, and BARRY, Circuit Judges.

(Filed: July 31, 2013)
_____

OPINION
_____

1

SHWARTZ, Circuit Judge.

This case arises from the unfortunate death of Albert Gunter while he was in police custody. Appellant Megan Gunter, the decedent's daughter, brought suit against the arresting officers and related municipal entities as administratrix of Albert Gunter's estate. Appellant now appeals the District Court's grant of summary judgment in favor of Defendants as to her deprivation of medical care claim and the District Court's disposition of the motions for reconsideration as to the excessive force and wrongful death claims.[1] We will affirm.

## I.

As we write primarily for the benefit of the parties, we recite only the essential facts and procedural history. Just after midnight on November 10, 2006, Lumberton police officers responded to a 911 call from Larry Gunter, who reported that his uncle, Albert Gunter, had been drinking, was locked in the garage of Larry Gunter's home, was "a little out of control," and there was a warrant for his arrest. App. 278-81. Patrolman Brian Norcross was the first to arrive at the Gunter home, followed by Sergeant Robert Slocum, Patrolman Douglas Lemyre, Corporal Paul Craig, and Patrolman Ronald Sanna (collectively, the "police officers"). Larry Gunter informed Norcross that Albert Gunter had been drinking alcohol and smoking narcotics all night, and that he wanted Albert

---

[1] Larry Gunter was a co-plaintiff, but he does not join the appeal. Burlington County and Burlington County Police Academy were dismissed from the action by stipulation and are not parties to this appeal. Appellant also asserted a Monell claim against the officers' employer, the Township of Lumberton, New Jersey, but she conceded that claim at the summary judgment stage and does not raise it here.

Gunter removed from his house. Upon approaching the garage, the officers heard Albert Gunter yelling, grunting, and making banging noises.

The police officers entered the garage and observed what appeared to be drug paraphernalia. They told Albert Gunter he was under arrest and attempted to place him in handcuffs, but he refused to place his hands behind his back. The officers used a "leg sweep" to force Albert Gunter to the ground, but he continued to resist and struck several of the police officers. App. 341-42. The police officers eventually sprayed him with pepper spray three times and handcuffed him. Albert Gunter continued to kick the police officers and so they attempted to secure his legs with flex cuffs, but he twice broke through them. The police officers then placed a belt around his legs, but he continued to kick, so they further restrained him by attaching his cuffed hands to the belt with three connected sets of handcuffs.[2] At some time during the altercation, Albert Gunter sustained a laceration over his right eye, and the police officers summoned paramedics. While he was restrained, he was placed face down on the ground. When the police officers observed that Albert Gunter was not breathing, they performed CPR, connected an automatic defibrillator, and requested an advanced life support paramedic team. The paramedics arrived and transported Albert Gunter to Virtua Hospital, where he was pronounced dead. An autopsy concluded that the cause of death was "[e]xcited delirium due to cocaine" and "[s]truggle due to cocaine toxicity." App. 167.

---

[2] As described below, the parties dispute whether this restraint constituted a "hog-tie" or a "hobble tie."

3

Appellant asserted claims against the police officers under 42 U.S.C. § 1983 for excessive force and deprivation of medical care, and a claim under the New Jersey Wrongful Death Act, N.J. Stat. Ann. § 2A:31-1.

The District Court initially denied the police officers' motion for summary judgment on all claims. After a subsequent hearing, the District Court granted summary judgment in favor of the police officers on the excessive force claim but denied summary judgment on the wrongful death and deprivation of medical care claims. Appellant and the police officers moved for reconsideration. Thereafter, the District Court issued an order, from which Appellant now appeals, that: (1) denied Appellant's motion for reconsideration of the District Court's grant of summary judgment in favor of the police officers on Appellant's excessive force claim and for punitive damages; (2) granted the police officers' motion for reconsideration of the order denying summary judgment as to Appellant's wrongful death claim, and granted summary judgment to the police officers on that claim; and (3) granted the police officers' motion for summary judgment on the issue of deprivation of medical care.

## II.

The District Court exercised jurisdiction over Appellant's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Appellant's state law claim pursuant to 28 U.S.C. § 1367. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

This appeal requires us to review an order that resolves motions for reconsideration and a motion for summary judgment. We generally review a District

4

Court's rulings on motions for reconsideration for an abuse of discretion.  Long v. Atl. City Police Dep't, 670 F.3d 436, 446-47 (3d Cir. 2012).  To the extent that a district court's ruling on a motion for reconsideration involves an issue of law, we review the underlying legal determination de novo.[3]  Burtch v. Milberg Factors, 662 F.3d 212, 220 (3d Cir. 2011); see also Long, 670 F.3d at 446 n.20 (explaining that our plenary review of legal determinations "stems from the understanding that an appeal from a denial of a Motion for Reconsideration brings up the underlying judgment for review") (internal quotation marks omitted).

With respect to the review of the portion of the order granting summary judgment, we will review it de novo, Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 348 (3d Cir. 1986), applying the same standard as the District Court, Slagle v. Cnty. of Clarion, 435 F.3d 262, 263 (3d Cir. 2006).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  We draw all reasonable factual inferences in favor of the party opposing summary judgment.  Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511-12 (3d Cir. 1994).

### III.

#### A.    Excessive Force

The Fourth Amendment's protection against unreasonable searches and seizures guarantees freedom from the use of excessive force during an arrest.  Graham v. Connor,

---

[3] If the ruling on the motion for reconsideration involved factual findings, we would review those findings for clear error.  Burtch, 662 F.3d at 220; Max Seafood Café ex rel Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999).

490 U.S. 386, 394 (1989). Courts apply an objective reasonableness standard when reviewing the force used to effect a seizure, and carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396-97 (internal quotation marks omitted). Because officers are often called upon "to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," id. at 397, we must evaluate the arrest "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," id. at 396; see also Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004).

Under Graham and its totality of the circumstances test, the factors courts consider are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." Kopec v. Tate, 361 F.3d 772, 776-77 (3d Cir. 2004) (citing Graham, 490 U.S. at 396). Other factors we have considered include "the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Id. at 777.

Appellant argues that the police officers' use of a sweeping kick to force Albert Gunter to the ground constituted excessive force. We disagree. The undisputed facts indicate Albert Gunter made wild arm motions, spoke angrily, and refused to comply with the officers' efforts to place him in handcuffs to effectuate the arrest.

Appellant also contends that administering pepper spray three times constituted excessive force. The record indicates that the officers only applied pepper spray in the first instance when Albert Gunter resisted arrest, and that they administered it additional times because it appeared to have no effect in subduing Albert Gunter as he continued to strike and resist the officers.[4]

Appellant also contends that the police officers applied excessive force in subduing and restraining Albert Gunter, and that this application of force led to his death. Appellant urges that Albert Gunter was hog-tied and that this restraint was objectively unreasonable in light of some cases indicating a danger to arrestees placed in this position. See Cruz v. City of Laramie, 239 F.3d 1183, 1188-89 (10th Cir. 2001) (collecting cases describing evidence of the danger of the hog-tie restraint). We reject that contention for two reasons. First, Appellant adduces no evidence that Albert Gunter was placed in a hog-tie position, as defined by Cruz. See id. at 1186 (distinguishing hog-tying, where the distance between the handcuffs and ankle cuffs is less than twelve inches, from hobble tying, where the distance is greater and the danger to arrestees is significantly less). Moreover, while the length of time that Albert Gunter was placed face down on the ground is disputed, there is no indication in the record that his death was caused by positional asphyxia, which is the cause of death associated with hog-tying. Id. at 1188-89.

---

[4] The record indicates that Albert Gunter's resistance "escalate[d]" after the pepper spray was administered, App. 345, and Larry Gunter told the police that he heard Albert Gunter stating to the police officers, "I'm not going, you're not going to take me alive . . . ." App. 417.

Second, we cannot say that the use of restraints was objectively unreasonable in light of Albert Gunter's extreme resistance, as detailed in the uncontroverted record. The police officers have adduced evidence that Albert Gunter repeatedly kicked the officers after his hands were restrained and that they applied the restraints only after he twice broke flex cuffs applied to his legs and continued to kick at the officers even after his legs were tied together. Cf. Mayard v. Hopwood, 105 F.3d 1226, 1228 (8th Cir. 1997) (holding use of hobble tie objectively reasonable when arrestee resisted being placed in a police car).

In short, the record demonstrates that Albert Gunter posed an immediate danger to the arresting officers, and that he actively and forcefully resisted arrest. The officers responded incrementally to Albert Gunter's violent resistance in their application of force, administration of pepper spray, and use of restraints. The District Court correctly held that, under these circumstances, the officers' conduct was objectively reasonable.

**B.     Wrongful Death**

Appellant appeals from the District Court's grant of the police officer's motion to reconsider its decision denying summary judgment on Appellant's claim under the New Jersey Wrongful Death Act, N.J. Stat. Ann. § 2A:31-1.[5]

---

[5] The Wrongful Death Act provides, in relevant part:

When the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable in an action for damages, notwithstanding the death of the

8

The District Court twice denied the police officers' motion for summary judgment on the wrongful death claim. On reconsideration, however, the District Court found that the only wrongful act that Appellant alleged caused Albert Gunter's death was the purported use of excessive force, and that Appellant could not establish the "wrongful act" element of a wrongful death claim because the District Court found the police did not use excessive force, and therefore summary judgment for the police officers was warranted.

On appeal, Appellant argues only that we should reverse the District Court's decision on the wrongful death claim because the police officers used excessive force, thereby committing a wrongful act. Because we will uphold the District Court's decision that the police officers did not use excessive force, and that is the only ground on which Appellant seeks to reverse the District Court's decision on the wrongful death claim, Appellant has not demonstrated a genuine dispute of material fact that precludes the entry of summary judgment. We therefore will affirm the decision granting summary judgment to the police officers on Appellant's Wrongful Death Act claim.

## C. Deprivation of Medical Care

Appellant also appeals the District Court's decision granting summary judgment on the claim of deprivation of medical care, claiming there are disputed material facts

---

person injured and although the death was caused under circumstances amounting in law to a crime.

N.J. Stat. Ann. § 2A:31-1.

concerning whether the police officers failed to promptly provide medical assistance to Albert Gunter.

Deprivation of medical care to arrestees violates their Fourteenth Amendment right to due process if it constitutes deliberate indifference to medical needs. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) (holding that the Due Process Clause confers arrestees a right to prompt medical treatment); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (evaluating a Fourteenth Amendment claim for inadequate medical care under the deliberate indifference standard); Groman v. Twp. of Manalapan, 47 F.3d 628, 636-37 (3d Cir. 1995) (applying the deliberate indifference test to an arrestee's claim). To demonstrate deliberate indifference to medical needs, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale, 318 F.3d at 582. We have held that "[d]eliberate indifference is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'" Id. (quoting Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000)). Appellant must therefore show that the police officers knew of the risk to Albert Gunter and disregarded it. Id.; Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001).

The record demonstrates that the police officers provided prompt medical care to Albert Gunter and that they sought emergency medical assistance both after he sustained the cut on his head and after they discovered that he was unresponsive. It is undisputed that Larry Gunter called the police at 1:29 a.m., and the first officer arrived just one minute later, with other officers arriving over the next ten minutes. The dispatch report

10

shows officers first called for paramedics at 1:43 a.m. Ten minutes later, the police officers called for advanced life support assistance. Just two minutes later, the officers attached the defibrillator to Albert Gunter and attempted to revive him.

Appellant's reliance on Larry Gunter's deposition testimony does not undermine the District Court's decision. Larry Gunter testified that the officers struggled to control Albert Gunter for ten to fifteen minutes, while the garage door was closed and his view was obstructed, and that after the officers opened the garage door, they waited an additional ten to fifteen minutes before calling for medical assistance. This account is inconsistent with the objective evidence recorded by the defibrillator and the dispatch service, and no reasonable jury could believe it.[6] As the Supreme Court has stated, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). The District Court therefore correctly declined to rely on those statements and properly found Appellant failed to adduce facts showing the police officers were deliberately indifferent to Albert Gunter's medical needs.

---

[6] Larry Gunter's account is also contradicted by the testimony of every other witness, including Larry Gunter's wife, who testified that, as soon as the officers realized Albert Gunter was not breathing, "[t]hey got the stuff off his hands real fast" and "[f]lipped him over and started CPR immediately." App. 646.

11

**IV.**

For the foregoing reasons, we will affirm the decision of the District Court granting summary judgment to the police officers.[7]

---

[7] Because we will affirm the District Court's decision on summary judgment as to all claims, we need not reach the Court's decision concerning punitive damages.