Gay Lynne NELSON, Plaintiff,

v.

CITY OF WICHITA, KANSAS, et al., Defendants.

CIVIL ACTION No. 01–2121–CM.

United States District Court, D. Kansas.

Aug. 22, 2002.

Carl A. Gallagher, Patrice M. Brown, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for plaintiff.

Edward L. Keeley, McDonald, Tinker, Skaer, Quinn & Herrington, P.A., Michael L. North, Sharon L. Dickgrafe, Wichita, KS, for defendants.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff Gay Lynne Nelson has sued defendants pursuant to 42 U.S.C. § 1983, alleging that her constitutional rights under the Fourth and Fourteenth Amendments were violated. Specifically, plaintiff alleges that defendants J.P. Stephens and Chad Beard used excessive force to effect her arrest for suspicion of driving under the influence of alcohol. Plaintiff further claims that defendants the City of Wichita ("the City") and former Police Chief Michael Watson failed to train defendants Stephens and Beard properly, which, plaintiff alleges, resulted in a violation of her Fourth Amendment rights. This matter is before the court on the Motion for Summary Judgment by Defendants Watson and City of Wichita (Doc. 83) and Plaintiff's Motion to Strike (Doc. 81).

### ● Facts[1]

This lawsuit arises from an incident that occurred on March 27, 1999. That evening, plaintiff was stopped by defendant Stephens for suspicion of driving under the influence of alcohol. During the vehicle stop, defendant Stephens was joined by other police officers, including defendant Beard. After administering a field sobriety eye test, defendant Stephens placed plaintiff under arrest and handcuffed her.

### ● Plaintiff's Version

According to plaintiff, the following events occurred: After she was handcuffed, defendants Beard and Stephens escorted her to the patrol car, pushed her into the back seat, and shut the door. Plaintiff claims that she told defendant Stephens three times that the handcuffs were too tight and finally told him that her fingers were going numb. Defendant Stephens then opened the door and started pulling on plaintiff's arm. Plaintiff asserts that her feet at the time were twisted together on the floorboard and that, as she was trying to get out of the car, her feet came untangled and defendant Stephens yelled that she had kicked him. Plaintiff testified in her deposition that defendants Stephens and Beard then grabbed her

---

1. The court construes the facts in the light most favorable to plaintiff as the non-moving party pursuant to Fed.R.Civ.P. 56.

arms and either "shoved" her down or "forced" her down face-first onto the street. Plaintiff claims that this was done intentionally and that the officers did not simply slip and drop her accidentally. According to plaintiff, the officers then held her face down in the gravel while a third officer approached and started kicking her in the back.

## ● Defendants Stephens and Beard's Version

Defendants Stephens and Beard's version of what took place is somewhat different. According to defendants Stephens and Beard, plaintiff was escorted to the patrol car after she was placed under arrest, but she refused to get in the car despite several requests. Defendant Stephens testified that plaintiff initially told him at least once that her handcuffs were too tight. Defendant Stephens responded by sticking his index finger between her hand and the handcuff, and he determined that the handcuffs were not too tight.

Defendant Stephens then opened the car door, allowing plaintiff to place her left foot on the ground. He put a copy of the implied consent form for a breathalyzer test on her left knee so she could follow along as he read the form. After plaintiff agreed to a breathalyzer test, she refused to put her leg back into the car, so defendant Stephens attempted to lift her leg into the car. According to defendant Stephens, plaintiff then laid back in the seat and began kicking defendant Stephens. Defendant Beard testified that he saw plaintiff violently kicking defendant Stephens. Defendant Beard was concerned from past experience that, even if they did get the car door closed, plaintiff would hurt herself or damage the vehicle with her kicking. Defendant Beard suggested that they take plaintiff out of the car, and defendant Stephens concurred. As defendant Beard went to assist defendant Stephens, he was himself kicked by plaintiff.

According to defendants Stephens and Beard, they reached into the patrol car, pulled plaintiff out, and stood her up beside the car.

Once out of the car, plaintiff began flailing her upper body and kicking behind her. As each officer was attempting to hold one of plaintiff's arms, the officers were losing control of her. Defendant Beard suggested that they take plaintiff to the ground to regain control of her. Defendant Beard's idea was that each officer would hold one of plaintiff's arms and lay her on the ground while the officers sank to their knees. Defendant Stephens testified that his strategy was for the officers to hold plaintiff's arms and pull her downward to her knees and then to the ground.

According to defendant Stephens, he made several verbal commands for plaintiff to lie on the ground and stop resisting. Plaintiff resisted and continued to flail her upper body and kick her legs. While defendant Stephens was reaching down to gain control of plaintiff's left leg, her body position suddenly shifted forward, and she fell to the ground. Defendant Stephens lost his grip on plaintiff as she fell. Defendant Beard testified similarly, asserting that, as he was holding plaintiff's arm and pulling her down, she suddenly fell forward and struck the right side of her face on the street. As plaintiff fell, defendant Beard lost his grip and he fell onto his knees next to plaintiff. Both defendants deny holding plaintiff's head down on the ground after her fall and claim that they instead rolled her over onto her side to prevent positional asphyxia. Both defendants deny kicking or hitting plaintiff.

## ● City Policy and Officer Training

The City had a policy in effect regarding the use of reasonable force. Specifically, Wichita Police Department policy 301.04 states:

A law enforcement officer does not have to retreat from making a lawful arrest because of resistance or threatened resistance to the arrest. Officers may use only that force they reasonably believe necessary to make the arrest or to defend themselves or others from bodily harm while making the arrest.

The Kansas Law Enforcement Training Act, Kan. Stat. Ann. § 74–5601 *et seq.*, requires that every full-time law enforcement officer complete a course of not less that 320 hours of accredited instruction at a certified law enforcement training school. Both defendants Stephens and Beard entered the Wichita–Sedgwick County Law Enforcement Training Center in 1998, at which time they successfully completed 848 hours of training.

During their training, defendants Stephens and Beard and other recruits received extensive training on the federal and state laws restricting the use of force to that which is reasonable under the circumstances. The recruits also received extensive classroom and hands-on practical training regarding the difference between reasonable and excessive force under various circumstances. At some of the classes, the recruits were taught the use of force continuum, which helps an officer determine the level of force permitted to establish control over a resistive suspect. The recruits also received extensive training on how to properly handcuff a suspect and attended classes regarding the use of deadly force and the criminal liability that could result from unjustified deadly force.

Following their graduation from the training academy, defendants Stephens and Beard and other recruits received an additional 14 weeks of field training with a field training officer. Both defendants Stephens and Beard had successfully completed the field training program before the incident at issue in this case.

### • Training on Handcuffed Suspects

Defendant Beard testified that he was not taught a particular procedure for taking down a resistive suspect who was handcuffed. Defendant Beard did testify that he was taught he could apply pressure points or a muscling technique to a resistive suspect to hold her in place. Defendant Beard also testified that he could have struck plaintiff's peroneal nerve in plaintiff's leg, which would have caused her knee to bend. In addition, defendant Beard testified that take-downs were part of his continuum of force training. Defendant Stephens testified that he had been taught procedures for taking resistive suspects to the ground when they were not handcuffed at all or when they had on only one handcuff but that he was not aware of any procedures specifically designed to take a restrictive suspect down who had both cuffs on.

Thomas Stolz, who was the captain in charge of the police department's training division, testified that officers are taught that they can take a handcuffed suspect who is in the back of a car kicking to the ground. He stated that the procedure is simply to keep hold of the suspect by the arms and lower the suspect down to the ground.

### • Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable

substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every ac-

tion." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

● **Discussion**

Plaintiff claims that she was deprived of her Fourth Amendment rights as a result of defendants Watson and the City's failure to train defendants Stephens and Beard regarding the proper use of force. Specifically, plaintiff argues that the training program was inadequate in that no training was provided on how to take down suspects who had both handcuffs on behind their back. Defendant Watson contends that he is entitled to qualified immunity, and the City asserts that it is entitled to summary judgment because the uncontroverted facts establish no constitutional violation.

● **The City**

██ Plaintiff has asserted a claim against the City, arguing that it failed to properly train its officers. "[T]he inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). To establish a claim under § 1983 for inadequate training of police officers in the use of force, a plaintiff must show (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training. *Allen v. Muskogee,* 119 F.3d 837, 841–42 (10th Cir.1997).

The court first looks to whether defendants Stephens and Beard used excessive

force. Defendants Stephens and Beard have testified that they used force only in response to plaintiff's physical resistance and that plaintiff fell to the ground because her flailing and kicking caused the officers to lose their grip. On the other hand, plaintiff has testified that she was not physically resistant and that defendants Stephens and Beard shoved or forced her down face first onto the street and then held her face down in the gravel while a third officer approached and started kicking her in the back. Viewing the facts in the light most favorable to plaintiff, the court finds that a reasonable jury could find, based on plaintiff's testimony, that defendants Stephens and Beard used force in excess of what was necessary.

The court next determines whether the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal. To satisfy this requirement, plaintiff must show that the situation the defendants encountered on that day was common or likely. *Allen,* 119 F.3d at 842. "The situation need not be frequent or constant; it must merely be of the type that officers can reasonably expect to confront." *Brown v. Gray,* 227 F.3d 1278, 1288 (10th Cir.2000). In this case, the use of force occurred while plaintiff was allegedly intoxicated and had both hands handcuffed behind her back. Defendants Stephens and Beard worked the third shift, and their patrol area, sometimes referred to as the "club district," encompassed numerous bars and restaurants. Defendant Watson testified that many times late at night those people frequenting club areas have been drinking or abusing other substances, are not in complete control of themselves, and have a tendency to fight. Thus, there is evidence in the record sufficient to withstand summary judgment that it is common or likely for officers, particularly in that district working the third shift, to be required to take down a handcuffed individual who is suspected of drinking.

The court next inquires whether the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact. In failure-to-train claims, the Supreme Court has made clear that a relatively high degree of fault on the part of the city is required. *Canton,* 489 U.S. at 391–92, 109 S.Ct. 1197. Such fault may be found where, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390, 109 S.Ct. 1197. In *Board of County Commissioners v. Brown,* the Supreme Court indicated that failure-to-train cases often require proof of a pattern of constitutional violations that put a city on notice that a new program is needed. 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). However, in *Brown,* the Court also discussed the possibility of basing liability upon a single violation of a federal right:

> In leaving open in *Canton* the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations, we simply hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations. The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence

of the policymakers' choice-namely, a violation of a specific constitutional or statutory right.

*Id.* at 409, 117 S.Ct. 1382. In the case at hand, plaintiff relies only on this particular incident to suggest that it would not have happened had the officers been adequately trained.

The court in this case is guided by the rationale set forth in *Lewis v. Board of Sedgwick County Commissioners,* 140 F.Supp.2d 1125 (D.Kan.2001). In *Lewis,* the plaintiff alleged that, while he was in jail, the detention officers used excessive force against him. Plaintiff sued, claiming that the excessive force was caused by the county's inadequate training, supervision, or discipline of its detention officers. On defendant's motion for judgment as a matter of law, the court reasoned:

> If, as the jury apparently believed, the detention officers did what plaintiff claimed-i.e., assaulted him and repeatedly struck him without justification or necessity and without any resistance on his part-it cannot be said that they did so as a result of inadequate training by the county. Such conduct would have been a clear violation of the county's policies and the training the officers received concerning the use of force.

*Id.* at 1134–35. The court found no deliberate indifference on the part of the county and further concluded there was no county policy that caused the violation of plaintiff's rights.

██ In the present case, plaintiff claims that she was not resisting and that defendants Stephen and Beard intentionally shoved or forced her down onto the street face first. Viewing the facts in the light most favorable to plaintiff, the court finds that plaintiff has failed to create a genuine issue of material fact. In other words, the court finds as a matter of law that, if defendants Stephens and Beard intentionally shoved or forced plaintiff face first onto the ground without provocation, they did not do so as a result of inadequate training by the City.

Any such conduct on the part of defendants Stephens and Beard would have been in clear violation of the City's policies and the training the officers received regarding the use of force. Wichita Police Department policy 301.04 permits officers to use only reasonable force in making an arrest. With respect to training, there is evidence in the record that the City provided training to its officers over and above what is required by state law. Moreover, there is no evidence in the record that the City's program for training its officers was inadequate as compared to any recognized or accepted law enforcement standards. In particular, defendants Stephens and Beard received training on reasonable and excessive force under various circumstances, the use of force continuum, the use of deadly force, and the officers' potential for criminal liability.

Plaintiff points out that both defendants Stephens and Beard testified they were not taught a particular procedure for taking a handcuffed suspect to the ground. The court concludes this does not constitute a glaring omission in the City's training program such that a reasonable juror could infer deliberate indifference. Defendant Beard testified about other procedures he was taught that possibly could be used on a handcuffed suspect, such as applying pressure points or a muscling technique, or striking a suspect's peroneal nerve in his or her leg, thereby causing the knee to bend. Defendant Beard in addition testified that take-downs were a part of his continuum of force training. Defendant Stephens testified that he had been taught procedures for taking resistive suspects to the ground when they were not handcuffed or when they had on one handcuff. Thus, any alleged use of excessive

force against plaintiff was not a highly predictable consequence of the City's lack of training on taking a handcuffed suspect to the ground.

If, as plaintiff has testified, defendants Stephens and Beard intentionally slammed her face first onto the street without justification, they did so not as a result of inadequate training by the City; rather, they did so despite having been trained that such force was prohibited. Accordingly, the court finds that plaintiff has failed to withstand summary judgment on the issue of deliberate indifference.

In addition to the foregoing, the court also concludes that summary judgment is appropriate with respect to the issue of whether the City's training is inadequate. Plaintiff offers no expert testimony to testify about the proper technique for taking down a handcuffed suspect, what the appropriate training should consist of, and whether such training is provided at other law enforcement academies. In *Brown v. Gray*, 227 F.3d 1278, 1287 n. 3 (10th Cir. 2000), the Tenth Circuit interpreted the Supreme Court's decision in *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821–22, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), to require expert testimony in these circumstances: "[T]he Supreme Court never found expert testimony to be insufficient in this context; to the contrary, it *required* such additional evidence for a jury to find municipal liability for a single incident of excessive force." *Brown*, 227 F.3d at 1287 n. 3. Plaintiff in this case bases her claim on a single instance of excessive force. As such, plaintiff's failure to provide any expert testimony renders summary judgment appropriate on this issue.

In sum, the court finds the evidence insufficient to withstand summary judgment. There is nothing in the record to create a genuine issue of material fact as to whether the City was deliberately indifferent or whether the City's training

caused the constitutional violation about which plaintiff complains.

The court notes that, in her response brief, plaintiff raises arguments new to this case. Plaintiff asserts that the City's internal investigative practices tacitly approved of the use of excessive force and that the City's procedures used to discipline its police officers were deficient. Any claims of the City's failure to investigate or discipline its officers was not asserted in the Pretrial Order. Rather, plaintiff's only theory of recovery against the City reads as follows:

> [Plaintiff] was deprived of her Fourth Amendment rights in violation of 42 U.S.C. § 1983 as a result of the City of Wichita and former Chief Michael Watson failing to train defendants Stephens and Beard in the proper use of force.

(Pretrial Order at 10). Moreover, plaintiff mentions nothing in the remainder of the Pretrial Order about the City's investigative and disciplinary procedures. Because "issues not preserved in the pretrial order ... [are] eliminated from the action," *Hullman v. Board of Trustees*, 950 F.2d 665, 668 (10th Cir.1991), the court does not consider the merits of any failure to investigate or failure-to-discipline claim, and hereby rules that any such claims are not part of this lawsuit. *Smith v. Ford Motor Co.*, 626 F.2d 784, 795 (10th Cir.1980) (stating that the decision to exclude facts or issues not found in the pretrial order is committed to the trial court's sound discretion).

● **Defendant Watson**

■ Defendant Watson raises the defense of qualified immunity. Qualified immunity protects state actors from liability when acting within the scope of their employment. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil dam-

ages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity provides government officials immunity from suit as well as from liability for their discretionary acts. *Mitchell v. Forsyth,* 472 U.S. 511, 526–27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio,* 847 F.2d 642, 644 (10th Cir.1988). The doctrine of qualified immunity serves the goals of protecting public officials "who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

The Supreme Court has established a two-part approach to determine if qualified immunity applies. "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *Tonkovich v. Kan. Bd. of Regents,* 159 F.3d 504, 516 (10th Cir.1998) (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 842 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). Thus, the court follows this two-step test to analyze the issue of qualified immunity raised by defendant here. *Butler v. City of Prairie Vill.,* 172 F.3d 736, 745 (10th Cir.1999).

The court first determines whether plaintiff has alleged the deprivation of a constitutional right. The court already has found that summary judgment is appropriate on plaintiff's failure to train claim against the City. Said another way,

the court has found, as a matter of law, that the training provided to defendants Stephens and Beard was not so inadequate as to violate plaintiff's constitutional rights. Accordingly, because plaintiff has failed to show the deprivation of a constitutional right regarding her failure-to-train claim, defendant Watson is entitled to summary judgment.

● **Plaintiff's Motion to Strike**

Plaintiff moves the court to strike defendants Stephens and Beard's Final Witness and Exhibit List and defendants City of Wichita and Michael Watson's Final Witness and Exhibit List for failure to timely comply with the court's Scheduling Order. Because summary judgment is granted to the City and defendant Watson pursuant to this order, the court finds that the request to strike the City and defendant Watson's witness and exhibit list is moot. The court will therefore address only plaintiff's request to strike defendants Stephens and Beard's witness and exhibit list.

The court entered its Scheduling Order on June 26, 2001. On that same day, defendants Stephens and Beard filed their initial disclosures. Pursuant to the Scheduling Order, the deadline for the parties to file their final witness and exhibit lists was October 5, 2001. On October 5, 2001, the parties agreed that an extension of the discovery deadline was appropriate given that plaintiff was in failing health. The discovery deadline ultimately was extended to January 30, 2002. Defendants Stephens and Beard filed their Final Witness and Exhibit List on April 1, 2002.

Plaintiff requests that certain exhibits be stricken because they were not disclosed prior to the filing of defendants Stephens and Beard's Final Witness and Exhibit List. Plaintiff also contends that the exhibits at issue, which are plaintiff's medical-records, are unrelated to plaintiff's claims.

Defendants Stephens and Beard argue that they are in compliance with the Pretrial Order, which states that the parties' final witness and exhibit disclosures shall be filed *no later than twenty days before trial.* The court need not resolve this issue, however, because the court finds that, even if defendants Stephens and Beard's witness and exhibit disclosure was filed out of time, plaintiff has failed to show the court that striking these exhibits is appropriate.

■ In moving to strike witnesses or exhibits not timely disclosed, a party must show prejudice. *Kaufmann v. United States,* Civ. A. No. 88–2193–0, 1990 WL 58687, *1 (D.Kan. Apr. 25, 1990). In this case, plaintiff has failed to argue, much less show, that she is prejudiced by the inclusion of these exhibits. Plaintiff has not identified any discovery which she claims would have been conducted had these exhibits been identified earlier. Moreover, the exhibits at issue relate exclusively to plaintiff's treatment by her own medical providers, thus plaintiff can hardly claim that she had no knowledge of these records. Considering that plaintiff knew of defendants Stephens and Beard's proposed exhibits at least six months before the trial of this matter is scheduled, the court finds that plaintiff has not been prejudiced.

Finally, plaintiff argues that the exhibits at issue are not relevant to this case. The court finds that, based on the information the court has at this time, it is too early to determine whether such exhibits are irrelevant. Any such determinations may be more appropriate for the court to determine in limine. Accordingly, plaintiff's motion to strike is denied.

IT IS THEREFORE ORDERED that the Motion for Summary Judgment by Defendants Watson and City of Wichita (Doc. 83) is granted. Defendants Watson and the City of Wichita are hereby dismissed from this action. Plaintiff's Motion to Strike (Doc. 81) is denied.