**Robin NEWELL, Plaintiff,**

v.

**CITY OF SALINA, a Kansas municipality, Chris J. Gregg, in his individual and representative capacity, and Shawn G. Moreland, in his individual and representative capacity.**

**No. 02–4101–SAC.**

United States District Court, D. Kansas.

July 29, 2003.

Thomas D. Haney, Wright, Henson, Somers, Clark & Baker LLP, Topeka, KS, for Plaintiff.

David R. Cooper, J. Steven Pigg, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Defendants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This case comes before the court on defendant's motion for summary judgment. Plaintiff claims that she was arrested without probable cause by defendant Shawn Moreland, and was subjected to unreasonable force by defendant Moreland and defendant Chris Gregg, police officers for the City of Salina. Plaintiff additionally brings a claim against the City for violation of the Fourth Amendment, and asserts state law claims of negligence, battery, false arrest and malicious prosecution.

## SUMMARY JUDGMENT STANDARDS

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's claim or position. *Martin v. Nannie and Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; it requires " 'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines*, 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir.1991)).

The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. At the same time, a party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.*, 45 F.3d 357, 363 (10th Cir.1995). "[I]t is not enough that the nonmovant's evidence be merely colorable or anything short of significantly probative." *Revell v. Hoffman*, 309 F.3d 1228, 1231 (10th Cir.2002) (citations and quotations omitted).

### STATEMENT OF FACTS

Plaintiff's version of the relevant events differs significantly from defendants'. For purposes of this motion, and viewing the facts in the light most favorable to the plaintiff, the court finds the following facts to be uncontroverted.

At approximately 10:00 p.m. on July 12, 2001, plaintiff left her house to walk a route of a little over two miles for exercise, as was her custom. She was wearing dark clothes with no reflective tape, and carried no lights. She customarily walked on a sidewalk or in the grass if there were no sidewalk because she believed it was dangerous to walk in the street at night. As she walked, she engaged in aerobic exercise by moving her arms in the following manner: pumping her arms to her side 16 times, then circling her arms forward 16 times, circling her arms backwards 16 times, then raising her hands until they touched above her head then back down to her side four times. She repeated this series of motions as she walked.

As she left her home, she passed a cul-de-sac approximately three blocks away where she noticed two police cars parked in front of a house. While nearing her home upon her return, she again noticed the police cars at or near the same location, and walked diagonally across the street just south of the cul-de-sac where the police cars were parked while performing the arm exercises described above. When she was approximately one half block past the cul-de-sac, she saw headlights from behind her shining in front of her. She then heard a male voice yell "stop," but did not realize the voice was that of a police officer. She replied "no," and began to walk into the grass toward a house which had its porch lights on.

Officer Moreland approached her from behind, and believed he detected an odor of an alcoholic beverage coming from her mouth and burnt marijuana coming from her person. As plaintiff was walking away, Officer Moreland grabbed her from behind by her right arm, just above the elbow. She turned and immediately grabbed his finger and pried it up, causing him to release his hand.

Plaintiff continued walking toward the lighted house until she was touched again, on her right arm or wrist. The next thing plaintiff recalls, she was on the ground. She claims that she was "thrown" to the ground, and hit it "pretty hard." Officer Gregg, who had used an arm bar twist to force plaintiff to the ground, then placed his knee or elbow into her back for a number of seconds, as if to hold her down, and grabbed her left arm.[1] Plaintiff remained on the ground no more than two minutes, during which time she was handcuffed. When she was face down on the ground, Officer Gregg remarked that plaintiff smelled like burnt marijuana. Plaintiff was then placed in a police car and realized for the first time that the men were uniformed police officers.

Plaintiff suffers from panic attacks, but did not have a panic attack at the time she was arrested. Plaintiff never complained that her handcuffs were too tight and does not allege that her handcuffs bruised her. At the jail, plaintiff's handcuffs were removed and she was booked. When the booking officers asked if she needed medical attention, she replied "no," and did not complain of any injuries. Plaintiff, who admits that she bruises easily, claims that officers caused her to be bruised on both her arms, her knee, the middle of her back, and her temple where her glasses hit the side of her face. Plaintiff also contends that the officers' acts exacerbated her panic attacks.

Plaintiff was charged with violation of Salina's intoxicated pedestrian ordinance, and resisting arrest. She was subsequently acquitted at the municipal court trial, and brought this suit thereafter.

## ISSUES

### I. Excessive Force claims against individual defendants

Defendant contends that even assuming for purposes of this motion that the facts are as plaintiff alleges, summary judgment is warranted on plaintiff's claims of excessive force against defendants Gregg and Moreland.[2]

 An arrestee's clearly established Fourth Amendment right to be free from excessive force during an arrest is violated if the officer's arresting actions were not " 'objectively reasonable' in light of the facts and circumstances confronting [him]." *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443, (1989); *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1313 (10th Cir.2002); *Cruz v. City of Laramie,* 239 F.3d 1183, 1188 (10th Cir.2001). The reasonableness of an officer's conduct is viewed "from the perspective of a reasonable officer on the scene," acknowledging that the officer may be "forced to make split-second judgments" in certain difficult circumstances. *Medina v. Cram,* 252 F.3d 1124, 1131 (10th Cir.2001) (quoting *Graham,* 490 U.S. at 396–397, 109 S.Ct. 1865); *Swanson v. Fields,* 814 F.Supp. 1007, 1016–17 (D.Kan.1993). Whether an officer acted reasonably in using force is "heavily fact dependent." *Romero v. Board of County Comm'rs,* 60 F.3d 702, 705 n. 5 (10th Cir.1995).

 In determining the reasonableness of an officer's actions, the court considers factors including the alleged crime's severity, the degree of potential threat that the suspect poses to an officer's safety

---

1. Whether and when plaintiff was told that she was under arrest are disputed.

2. Defendant additionally seeks summary judgment on plaintiff's claim against defendant Gregg for arrest without probable cause. The

court does not address this issue because the Pretrial Order contains no such claim. See Dk. 47, § 7b (stating claim against Gregg for use of force); § 7c (stating claim against Moreland for use of force and arrest without probable cause).

and to others' safety, and the suspect's efforts to resist or evade arrest. *Medina,* 252 F.3d at 1131. "In addition, an assessment of the degree of force actually used is critical to the balancing test used to determine if the force was excessive. (citation omitted.)" *Rucker v. Hampton,* 49 Fed. Appx. 806, 809, 2002 WL 31341532, *3 (10th Cir.2002). The court will additionally consider the extent of the injury inflicted by the use of force, see id,[3] but will not focus upon that factor to the extent it would had plaintiff alleged a due process violation. See *Christiansen v. City of Tulsa,* 332 F.3d 1270 (10th Cir.2003) (listing the extent of the injury inflicted as one of three factors in considering due process claims of excessive force.)

### Analysis

■ The court is challenged to imagine a crime less severe than the crime of being an intoxicated pedestrian, under the facts of this case. Although plaintiff did walk on the street for whatever period of time it took her to cross the street diagonally while moving her arms in a manner which could have been perceived as unusual, no other evidence of any crime or offense was apparent before the officer yelled at her to stop.

When Officer Moreland approached plaintiff, he detected an odor of alcohol and marijuana coming from her person. Thereafter, he attempted to physically restrain plaintiff, and she pried his finger off her arm in an attempt to get away. Although the crime of resisting arrest is more severe in general than the offense of being an intoxicated pedestrian, the acts plaintiff took in resisting arrest were so minimal that Officer Gregg characterized them as "passive resistance." (*Gregg depo.,* p. 35–36.)

The degree of potential threat that the plaintiff posed to the officers' safety or to the safety of others was also minimal. Plaintiff is a female, was not alleged to have been armed or carrying any weapon or other object, was minding her own business in a manner which, although perhaps unusual, posed little danger or no to others, and was walking away from the area where the officers were. The sole potential threat to others was during the period of time that it took plaintiff to cross the street, when she could have served as an obstacle to traffic. Yet no evidence establishes that there was any traffic the neighborhood at that time of night, or that plaintiff's manner of walking in any way posed a hazard to herself or others.

Plaintiff did make some effort to resist arrest, but only by attempting to pry one finger of an officer off her arm at a time when a man approached her from behind, in the dark, without having identified himself as an officer, and before she realized that he was an officer of the law. Plaintiff did not actively resist arrest. Similarly, although it could be said that plaintiff attempted to evade arrest by walking away when the officer told her to stop, plaintiff's stated intent was to try to evade an assault by an unknown person, rather than to evade arrest by flight.

The force used by the officers was an arm bar twist to force plaintiff to the ground, followed by actions including a knee or elbow in the back, allegedly to control plaintiff while officers handcuffed her. Reasonable persons could find that this degree of force was disproportionate to the offense of an intoxicated pedestrian and to the passive resistance of plaintiff.

Although the above factors weigh against the reasonableness of the officers'

---

**3.** An excessive force claim under the Fourth Amendment may succeed even where there has been no physical contact between the officers and the suspect. See *Martin v. Bd. of County Comm'rs,* 909 F.2d 402, 406 (10th Cir.1990).

conduct, the extent of the physical injury inflicted by their use of force is quite minimal. Plaintiff complains only of bruises, which appear to approximate the size of a coin, on areas which came into direct contact with the officer's hands or her glasses.

Defendant contends that this case "presents the classic situation in which a plaintiff's own actions in reaction to a legitimate law enforcement encounter ... justif[y] the subsequent actions of the law enforcement officers involved." *Latta v. Keryte,* 118 F.3d 693, 698 (10th Cir.1997). But if plaintiff's assertions are believed, as they are for purposes of this motion, this case presents the situation in which plaintiff's actions were not knowingly in response to a legitimate law enforcement encounter, but were instead in response to the perceived command and touch of an unknown assailant.

The court finds that viewing the facts in the light most favorable to plaintiff, a reasonable jury could find that the officers used force in excess of what was objectively reasonable in light of the facts and circumstances confronting them. It would have been objectively reasonable for the officers to have identified themselves as such, prior to using any degree of force to effect plaintiff's arrest. See *Kyle v. City of New Orleans,* 342 So.2d 1257, 1260–61 (La.Ct.App.) ("the duty of the police officer is to do that which is reasonable, i.e., he is required to take reasonable means to inform the suspect or accused of his identity as a police officer"), *rev'd on other grounds,* 353 So.2d 969 (La.1977) (finding that police used excessive force, but without relying specifically on officer's failure to identify themselves); Cf *United States v. Feola,* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975)("where an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property.") Defendants' motion for summary judgment on her claims of excessive force against the officers shall therefore be denied.

## II. Qualified Immunity

Defendant next alleges that the officers are entitled to qualified immunity because their actions, even if not objectively reasonable, were not in violation of clearly established law.

Because the reasonableness inquiry overlaps with the qualified immunity analysis, "a qualified immunity defense [is] of less value when raised in defense of an excessive force claim." *Wilson v. Meeks,* 52 F.3d 1547, 1552 (10th Cir.1995).

Consequently, this court will not approve summary judgment in excessive force cases—based on qualified immunity or otherwise—if the moving party has not quieted all disputed issues of material fact. *Allen v. Muskogee,* 119 F.3d 837, 840–842 (10th Cir.1997). In *Zuchel v. Spinharney,* 890 F.2d 273 (10th Cir. 1989), we agreed that a district court could not justifiably pin a grant of summary judgment on qualified immunity while disputed material facts remained as to whether an officer behaved in an "objectively reasonable" fashion.

*Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1314 (10th Cir.2002).

■ Defendants acknowledge that it is well established that plaintiff has a right to be free from the use of excessive force by law enforcement officers. The court finds that the officers' alleged use of an arm bar twist which forces a suspect to the ground to effect a nighttime arrest of one suspected to be an intoxicated pedestrian, without having identified themselves as law enforcement officers, may not be objectively reasonable under the circumstances present here. See *Yates v. City of Cleveland,*

941 F.2d 444, 447 (6th Cir.1991) (denying qualified immunity in excessive use of force case where the officer had entered a dark hallway at 2:45 a.m. without identifying himself as a police officer, without shining a flashlight, and without wearing his hat); *Johnson v. Grob*, 928 F.Supp. 889, 909 (W.D.Mo.,1996) ("a seizure outside the home may be objectively unreasonable when the seized person suffers injuries because the officers were not identified or identifiable as such," finding officers should defer their identification as officers only when necessary); cf. *Wilson v. Arkansas*, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995) (holding that, to diminish the potential for violence, the Fourth Amendment reasonableness inquiry includes the common law principle that police must "knock and announce" before they break open the doors of a dwelling to carry out a search or arrest warrant).

The court additionally finds disputed questions of fact regarding the claim of false arrest which preclude qualified immunity for Officer Moreland. Whether, in light of all the information possessed, Officer Moreland reasonably could have believed he had probable cause to arrest plaintiff is based upon disputed facts and credibility determinations, including whether plaintiff was under the influence of alcohol or any drug to a degree which rendered her a hazard, and whether plaintiff was walking on a highway at the time.

Viewed in the light most favorable to the plaintiff, the court finds genuine issues of material fact precluding a judicial determination of whether the officers' conduct was objectively reasonable. At trial, additional facts may come to light showing that such conduct was reasonable, or the jury may disbelieve plaintiff's presentation of the facts. The court does not find that the officers, or either of them, violated the

Fourth Amendment, merely that neither is entitled to qualified immunity on these claims.

### III. Official Capacity Claims

■ Defendant additionally seeks dismissal of the official capacity claims against the individual defendants. Plaintiff articulates no valid opposition to this request.

Dismissal of these claims is warranted as a matter of judicial economy and efficiency. The Supreme Court has held that a suit against an individual in his official capacity is really "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166, 105 S.Ct. 3099. See *Sims v. Unified Government of Wyandotte County/Kansas City, Kansas,* 120 F.Supp.2d 938, 944 (D.Kan.2000). Accordingly, plaintiff's claims against defendants Gregg and Moreland in their official capacities are dismissed.

### IV. Liability of City

The sole basis asserted in the Pretrial Order for liability against the City of Salina is that it "maintained a custom, policy, or practice of deliberate indifference to the training of its police officers regarding probable cause for arrest or use of reasonable force." (Dk.47). Specifically, the Pretrial Order asserts only that the City of Salina "failed to train its officers to differentiate between intoxicated persons and persons with a physical or emotional disability." No custom, policy, or practice other than lack of training is alleged.[4]

4. Accordingly, the court does not address defendant's contentions regarding failure to supervise.

### Single incident

■ In the absence of an explicit policy or an entrenched custom, "the inadequacy of police training may serve as a basis of § 1983 liability ... where the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412, (1989). This deliberate indifference standard may be satisfied "when the municipality has actual or constructive notice that its action or failure is substantially certain to result in a constitutional violation, and it consciously and deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir.1998).

In the case at hand, plaintiff relies only on the incident of her arrest to suggest that it would not have happened had the officers been adequately trained.

Although a single incident generally will not give rise to liability, *Okla. City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), "deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action." *Barney,* 143 F.3d at 1307 (internal citations omitted). The official position must operate as the "moving force" behind the violation, and the plaintiff must demonstrate a "direct causal link" between the action and the right violation. *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 399, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). That is, "[w]ould the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *City of Canton,* 489 U.S. at 391, 109 S.Ct. 1197, 103 L.Ed.2d 412. With regard to any attempted

showing of "deliberate indifference" by a municipality, the existence of "material issues of material fact preclude[s] summary judgment." *Cruz v. City of Laramie,* 239 F.3d 1183, 1191 (10th Cir.2001).

*Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1317–18 (10th Cir.2002).

### Inadequate training—use of force

■ The elements of an inadequate training claim against law enforcement officers in the use of force are well established.

To establish a claim under § 1983 for inadequate training of police officers in the use of force, a plaintiff must show (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training. *Allen v. Muskogee,* 119 F.3d 837, 841–42 (10th Cir.1997).

*Nelson v. City of Wichita, Kansas,* 217 F.Supp.2d 1179, 1183 (D.Kan.2002). These factors are examined below.

### 1. Use of force

As the court held above, viewing the facts in the light most favorable to plaintiff, a reasonable jury could find that the officers used force in excess of that which was objectively reasonable, given the totality of the circumstances confronting them, including the officers' alleged failure to identify themselves as police officers prior to taking plaintiff down.

### 2. Usual and recurring situation

To satisfy this requirement, plaintiff must show that the situation the defendants encountered on that day was common or likely. *Allen v. Muskogee,* 119 F.3d 837, 842 (10th Cir.1997). "The situation need not be frequent or constant; it must merely be of the type that officers can reasonably expect to confront." *Brown v. Gray,* 227 F.3d 1278, 1288 (10th Cir.2000).

If the use of force was justified, it was justified solely because plaintiff resisted arrest. Persons who resist arrest, and law enforcement's response to such resistance, is common enough that it is addressed in Kansas statutes. See K.S.A. § 21–3215 (Supp.1993). Further, the deposition testimony of the individual defendants demonstrates that officers can reasonably expect to encounter persons who resist arrest. The first two factors thus weigh in favor of the plaintiff.

### 3. Inadequate training demonstrating deliberate indifference

▇ The court next inquires whether plaintiff has shown inadequate training and if so, whether the lack of training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact. In failure-to-train claims, the Supreme Court has made clear that a relatively high degree of fault on the part of the city is required. *Canton,* 489 U.S. at 391–92, 109 S.Ct. 1197. Such fault may be found where, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately in-

different to the need." *Id.* at 390, 109 S.Ct. 1197.

In support of its allegation that the City's training of its police officers is inadequate,[5] plaintiff first shows the court that the City's 600 page policy and procedure manual, which Chief Hill described as "state of the art," does not contain any factors by which an officer may differentiate between someone who, for example, has multiple sclerosis and may have trouble walking and talking, as opposed to someone who may be intoxicated. Secondly, none of the written materials given officers to aid their recognition of intoxicated drivers would assist them in distinguishing between someone who may have a physical handicap and someone who may be intoxicated. Finally, the City has no standing orders guiding officers in how to distinguish between someone who may have a panic disorder and someone who is intoxicated. (Hill depo. p. 24.)

In response, Chief Hill testified that the officer's "physical observations, training experience and good judgment" would assist them in making such determinations. (Hill depo. p. 25.) He states that the City has "lots and lots of walkers." (Hill depo., p. 42.) The department's policy regarding intoxicated pedestrians who are compliant with officers is usually not to arrest them, but to turn them over to another person, if one is available, as part of a community caretaking function. However, when an intoxicated pedestrian is contacted by an officer and "the person physically batters the officer, that person could be taken into custody every time." (Hill depo. p. 42.) Chief Hill additionally testified that he probably would have arrested this plaintiff for battery against a law enforcement officer. (*Id.*)

---

**5.** The court considers all the evidence submitted by either party to relate to plaintiff's claim of inadequate training on both issues, i.e., probable cause to arrest and the use of force.

Defendant also shows the court that defendants Gregg and Moreland graduated from the Kansas Law Enforcement Training Center ("KLETC") in March of 2000 and became certified law enforcement officers. While at KLETC, both officers received training concerning the relevant constitutional limitations on the use of force as applied to the officers' duties, and concerning the laws of arrest, specifically, the "rules, restrictions and guidelines established by the U.S. Constitution, the Kansas Legislature, and U.S. and Kansas Supreme Courts, which control a law enforcement officer's authority to arrest ..."

Plaintiff does not allege that KLETC's program for training police officers is inadequate as compared to any recognized or accepted law enforcement standards. Plaintiff proffers no witness with knowledge in law enforcement or constitutional standards to identify or explain how this incident could be viewed as a predictable result of the City's alleged lack of training its officers to differentiate between persons with panic disorder and intoxicated persons. *Compare Allen v. Muskogee, Oklahoma,* 119 F.3d 837, 842–43 (10th Cir. 1997) (expert on police tactics and procedures testified that the city's training concerning handling of mentally ill individuals was contrary to police department training throughout the United States and that it caused the violation of plaintiff's rights). City officers are not alleged to have previously violated the constitutional rights of plaintiff or other persons with panic disorders in such a manner that the need for further training in that area was obvious. Nor has plaintiff identified any "glaring omission" in the county's training program from which one could reasonably say that the use of excessive force against the plaintiff, or plaintiff's arrest without probable cause, was a highly predictable consequence of the omission.

The court finds that plaintiff has failed to raise a material question of fact that the City's training was inadequate in demonstrating deliberate indifference to persons with panic disorders, or in any other manner.

### 4. Direct causal link between the constitutional deprivation and the inadequate training

Even assuming that the City's training was inadequate to the extent it demonstrated deliberate indifference to persons with panic disorders, such lack of training cannot be considered the cause of the incident on July 12, 2001. Plaintiff does not contend that her arm swinging, her manner or mode of walking, her finger prying or any other of her actions which led to her arrest were caused by or otherwise related to her panic disorder. Thus even if the individual defendants had received specific and adequate training in how to distinguish between symptoms of panic disorder and symptoms of intoxication, their acts on the night in question would have been no different.

The court concludes that the facts of this case do not bring it within the narrow range of circumstances in which liability may attach without any pattern of past constitutional violations. Plaintiff must go beyond mere allegations that officer training is deficient. See *Meade v. Grubbs,* 841 F.2d 1512, 1528 (10th Cir.1988). The City of Salina is therefore entitled to summary judgment on all plaintiff's claims against it.

### V. Negligent Arrest Claim

Plaintiff alleges that "defendants negligently failed to ascertain whether plaintiff was intoxicated ... prior to arresting her" and that "defendants' failure to do so resulted in plaintiff being arrested based upon the negligence of arresting officers." (Dk.47, § 7d(1)). Defendant

seeks summary judgment on plaintiff's claim for negligent arrest because Kansas courts do not recognize such a cause of action. See *Brown v. State of Kansas,* 261 Kan. 6, 9, 927 P.2d 938 (1996) finding a cause of action which alleges negligent conduct which results in false arrest and consequent damages to be a cause of action for false imprisonment rather than negligence for the purpose of statute of limitations.

Here, although plaintiff has couched her claim in terms of negligence of the officers, the "very gist and essence of the plaintiff's cause", *Id.* at 15, 927 P.2d 938, is for false arrest, unconstitutional use of force, and/or negligent training by the City. Plaintiff's state law claim for negligent arrest does not state a separate cause of action under the present facts. See *Van Cleave v. City of Marysville, Kansas,* 2002 WL 31527850, *2 (D.Kan.2002); see also *Grauerholz v. Adcock,* 51 Fed.Appx. 298, 301, 2002 WL 31579878, *3 (10th Cir.2002) (noting district court's ruling that Kansas does not recognize claim for negligent use of force); *Miller v. City of Overland Park,* 231 Kan. 557, 559, 646 P.2d 1114 (1982) (noting that "negligent arrest" count had been dismissed for failure to state a claim upon which relief could be granted, and was not appealed). Defendant's motion for summary judgment on this claim is thus granted.

The court finds it unnecessary to reach defendants' contention that the officers are entitled to "public officer immunity and qualified immunity from plaintiff's claim of negligent arrest" pursuant to provisions of the Kansas Tort Claims Act or Kansas case law. (Dk.45, p. 26).

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Dk. 44) is granted on all claims against the City of Salina, is granted on plaintiff's claims against defendants Gregg and Moreland in their official capacities, and is granted on plaintiff's claim of negligent arrest.

IT IS FURTHER ORDERED that such motion is denied in all other respects.