IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 5, 2019 Session

## CHERYL MEROLLA v. WILSON COUNTY, TENNESSEE

Appeal from the Circuit Court for Wilson County
No. 2013-CV-315   Clara W. Byrd, Judge

_____

### No. M2018-00919-COA-R3-CV

_____

Plaintiff filed a complaint against the defendant county alleging mistreatment in the county jail resulting in physical and emotional injuries. Following a bench trial, the trial court dismissed all of the plaintiff's claims. We affirm the trial court's decision in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J.,  M.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and KENNY ARMSTRONG, JJ., joined.

Wm. Kennerly Burger, Murfreesboro, Tennessee, for the appellant, Cheryl Merolla.

Jeffrey R. Thompson, and N. Craig Strand, Knoxville, Tennessee, for the appellee, Wilson County, Tennessee.

### OPINION

#### BACKGROUND

On June 12, 2012, Plaintiff/Appellant Cheryl Merolla was arrested in connection with a domestic incident concerning her adult daughter and estranged son-in-law. Ms. Merolla admittedly suffers from mental health issues and diabetes. Ms. Merolla was initially evaluated in a medical center, released, and then transported to Wilson County Jail. Following her intake into jail after midnight on June 13, 2012, Ms. Merolla became belligerent and allegedly would not stop beating on her cell door, purportedly in an effort to obtain necessary medications and food to treat her diabetes. In any event, at approximately 3:10 am, the Wilson County jailers made the decision to restrain Ms. Merolla by shackling her, i.e., cuffing her arms behind her back and her feet together. The restraints were removed at approximately 6:25 am. That same morning, Ms. Merolla

was released without charge and taken to a hospital for psychiatric treatment; she remained hospitalized for four days.

On June 5, 2013, Ms. Merolla filed a complaint against Defendant/Appellee Wilson County alleging violations of the Tennessee Governmental Tort Liability Act ("GTLA"), or alternatively, Tennessee Code Annotated section 8-8-301, *et. seq.* Therein, Ms. Merolla claimed that she suffered physical and emotional injuries after being "hogtied" for upwards of six hours by employees of the Wilson County jail.

The case was eventually tried by bench trial in March 2018. Much of the testimony at trial centered on the shackling of Ms. Merolla and the jail's alleged refusal to provide her with diabetes medication. There is no dispute that Ms. Merolla informed the jail of her diabetes diagnosis during intake; Ms. Merolla did not, however, indicate on intake forms that she suffered from mental health issues.

According to Ms. Merolla, she was eventually placed in restraints at the jail due to her unruly, loud behavior. Although Ms. Merolla did admit to "banging on the [cell] door with [her] hands," she denied ever becoming violent or that her behavior ever placed her at risk of harm. As such, she contended that the use of restraints was not authorized by the Wilson County Jail Policies and Procedures ("the Wilson County Jail Policies" or "the policies"), which only allow the use of restraints in certain situations, including "to enforce rules within the Wilson County Jail" and "to prevent serious damage to county property and to prevent an inmate from inflicting self harm" but not "as a means of punishment or retaliation." The policies flatly prohibit "hog-tying an inmate" but does not define this practice. The policies also expressly provide that shackled inmates should be checked every fifteen minutes, and that the use of restraints should be documented by hand-held video camera whenever possible. A video of the use of restraints was submitted into evidence, as well as some video of Ms. Merolla's conduct following the placement of the restraints. No video evidence was submitted showing Ms. Merolla's conduct prior to the use of restraints.

According to Ms. Merolla, she suffered excruciating pain as a result of the shackling of her arm that had previously been injured in the scuffle with her son-in-law, as well as emotional injuries that required several days of mental health treatment.[1] Ms. Merolla admitted, however, that her diabetes condition was not affected in the long-term by the jail's failure to provide her with food or medication. Ms. Merolla submitted medical proof in the form of depositions and records to support her claim of physical injuries as a result of the jail staff's actions.

In contrast, Wilson County jailers[2] testified that Ms. Merolla was placed in restraints solely in an effort to prevent her from harming herself by kicking and punching

---

[1] Among the evidence presented was a professionally shot video of Ms. Merolla while hospitalized detailing the injuries that she received as a result of the events at issue in this case.

[2] The trial court heard testimony from several corrections officers who were present during in the

her cell door. According to these officers, pursuant to jail policies, the restraints were used only following several requests that Ms. Merolla desist from kicking and punching the door. The employees admitted, however, that Ms. Merolla never showed any signs of foot or knuckle injuries prior to the use of restraints, but contended that the jail's policy was not wait until a physical injury occurred prior to using restraints. The jailers also admitted that Ms. Merolla was still able to kick the door following the shackling, albeit in a more limited manner.[3] Still, the employees denied that restraints were used in a punitive manner due to Ms. Merolla's admittedly obnoxious behavior, as the jail employees testified that they were accustomed to disruptive inmates.

Despite Ms. Merolla's claim that she was hogtied, the jailers testified that Ms. Merolla was merely handcuffed behind her back and her legs were shackled together. None of the jailers testified that this action met the definition of hogtying, but no formal definition of the term was offered. The jailers explained that Ms. Merolla could not be handcuffed in the front because the handcuffs would provide Ms. Merolla a weapon to continue beating the doors. Finally, the jail employees testified that Ms. Merolla was constantly monitored by jail staff because a live video feed was transmitted to the staff desk that allowed jailers to monitor her at all times; this feed, however, was not capable of recording and storing content at the time of the events at issue in this case.[4]

At approximately 4:30 am, the jailers returned to Ms. Merolla's cell to place her upright. Ms. Merolla admitted that she had lain down to on the floor to find comfort due to pain and nausea.[5] According to the jailers, however, Ms. Merolla was continuing to kick the cell door from a prone position. Although Ms. Merolla testified that she had vomited and urinated on herself in the intervening time, all witnesses who saw Ms. Merolla the following morning testified from their records and reports that there was no indication that Ms. Merolla had soiled herself in the approximately three hours that she was shackled.[6]

---

Wilson County Jail on the night of Ms. Merolla's arrest, including Chris Brandenburg, Anthony Barrett, Wendy Meyers (by deposition), and Penny Shoemake (by deposition). These witnesses testified largely consistently and their testimony has therefore been summarized together so as not to tax the length of this opinion.

[3] Ms. Merolla likewise admitted that she had some mobility with the shackles on, including the ability to "shuffle" around.

[4] Because the jail facility did not record this area, the placement of the restraints on Ms. Merolla was recorded via hand held video recording device. The jailers testified that they did not record Ms. Merolla's behavior that led to the use of restraints because they did not have the manpower or technology to record every occurrence in the jail during that period.

[5] The video shows that Ms. Merolla was sitting upright on a bench in the cell immediately following the placement of the restraints. The video goes on to depict Ms. Merolla standing at the cell door and walking around her cell.

[6] As depicted in the video, Ms. Merolla also repeatedly complained that the shackles had caused her ankles to bleed. Ms. Merolla admitted in her later testimony that the shackles did not actually cause bleeding on her ankles.

Captain Douglas Whitefield was tendered as an expert on the jail's policies over the objection of Ms. Merolla. According to Captain Whitefield, he had over ten years of experience in corrections and had been an integral part of the writing of the jail's policies and procedure. According to Captain Whitefield, all applicable policies and procedures were complied with during Ms. Merolla's incarceration.

The jailers further testified that general jail policy prevents them from providing inmates with any medications that they bring in with them, due to various issues related to incorrect dosages and illegal medicines entering the jail. Moreover, issues of medical care are left solely to the jail's medical staff, which was employed by Southern Health Partners, rather than Wilson County.

The Southern Health Partners nurse on duty that night confirmed that, as reflected on the video, she was present when Ms. Merolla was shackled. The nurse testified that she asked Ms. Merolla about her diabetic medication, but believed that no medication was necessary at that time due to the late hour (Mr. Merolla admitted to the nurse that she typically took the medicine at dinner time) and the fact that Ms. Merolla stated that she only took her blood sugar once a month. Moreover, the nurse explained that the jail only administers prescription medications that are obtained independently from physicians.[7] The nurse also testified that Ms. Merolla's behavior was not consistent with a diabetic episode.

The trial court issued an oral ruling at the conclusion of trial in favor of Wilson County. Therein, the trial court made express credibility findings against Ms. Merolla, whom the trial court described as "just not credible."[8] On April 17, 2018, the trial court entered an order dismissing Ms. Merolla's claims, finding no breach of a duty owed to Ms. Merolla, that that there was no credible proof that Ms. Merolla sustained an injury during her incarceration proximately caused by Wilson County employees, and that to the extent the complaint alleged violations of civil rights, such violation was not proven and Wilson County was immune from suit. The trial court's oral ruling was incorporated by reference into the trial court's written order. Ms. Merolla timely appealed to this Court.

### ISSUES PRESENTED

Ms. Merolla raises three issues, which are taken and slightly restated from her brief:

1. Pursuant to Tennessee Code Annotated section 8-8-302, is Wilson County responsible for the injuries sustained by Ms. Merolla at the hands of the Wilson County deputies?

---

[7] Moreover, Ms. Merolla had been examined and discharged by a hospital earlier in the evening.

[8] In support, the trial court noted that numerous exaggerations made by Ms. Merolla that she later admitted at trial were not accurate. As such, the trial court noted that "Ms. Merolla was her own worst enemy."

2. Does the preponderance of the evidence support the trial court's conclusion that Ms. Merolla failed to present a viable claim under the provisions of the GTLA? Specifically, did the County, through its employees/deputies, unnecessarily injure Ms. Merolla under non-discretionary circumstances, and under circumstances where the Public Duty Doctrine is not applicable as an affirmative defense?
3. Was Captain Whitefield a qualified expert?

## STANDARD OF REVIEW

This case was resolved following a bench trial. Under rule 13 of the Tennessee Rules of Appellate Procedure, the trial court's findings of fact from a bench trial are reviewed "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We give "great weight to a trial court's factual findings that rest on determinations of credibility." *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005) (citing *In re Estate of Walton*, 950 S.W.2d 956, 959 (Tenn. 1997)). A trial court's conclusions of law, however, are not entitled to a presumption of correctness. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001).

## DISCUSSION

### I.     GTLA Claim

We begin with the question of whether the County has immunity for the claims asserted against it under the Tennessee Governmental Tort Liability Act ("GTLA"). In this case, as evidenced by Ms. Merolla's complaint, pre-trial brief, arguments at trial, and appellate brief, Ms. Merolla's central contention is that Wilson County's employees breached a duty to her, resulting in physical and emotional injuries that are recoverable under the GTLA. In particular, Ms. Merolla contends that Wilson County's immunity under the GTLA is removed under the broad waiver of immunity applicable to actions involving the negligence of governmental employees. A brief review of the GTLA and our immunity jurisprudence is therefore helpful.

"At common law the sovereign entity, be it the state, a city, or a county, had no "discretionary act" immunity and indeed needed none. The sovereign entity was already absolutely immune under the common law doctrine of sovereign immunity." *Lucas v. State*, 141 S.W.3d 121, 127 (Tenn. Ct. App. 2004); *see also* Tenn. Const. art. I, § 17 ("Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct."). "In 1973, the Legislature enacted the GTLA, which reaffirmed generally the grant of sovereign immunity provided at common law and in the Tennessee Constitution[.]" *Young v. City of LaFollette*, 479 S.W.3d 785, 790 (Tenn. 2015). The GTLA provides, in relevant part, that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and

discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a); *see also* **Limbaugh v. Coffee Med. Ctr.**, 59 S.W.3d 73, 79 (Tenn. 2001) ("[T]he General Assembly enacted the Tennessee Governmental Tort Liability Act . . . to codify the general common law rule that all governmental entities shall be immune from suit[.]"). The GTLA states, however, that removal of governmental immunity is appropriate under certain circumstances. For example, Tennessee Code Annotated section 29-20-205 provides that immunity from suit "is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment[.]" Thus, a plaintiff who has allegedly suffered an injury at the hands of a negligent government employee acting in the scope of his or her employment may bring suit against the relevant government entity.

Nonetheless, section 29-20-205 also goes on to provide for specific circumstances under which immunity is preserved even when the plaintiff claims injuries that result from an employee's negligence. As is relevant to this case, section 29-20-205(2) explains that immunity is not removed where the injury arises out of "false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, **or civil rights**[.]" Tenn. Code Ann. § 29-20-205(2) (emphasis added). Consequently, this Court has previously held that where the "underlying acts which [a plaintiff] alleges to be negligent . . . [are] predicated on intentional tortious conduct involving the violation of [the plaintiff's] civil rights" by government employees, the "'civil rights exception' in Tenn. Code Ann. § 29-20-205(2)" is applicable. **Jackson v. Thomas**, No. M2010-01242-COA-R3-CV, 2011 WL 1049804, at \*7 (Tenn. Ct. App. Mar. 23, 2011) (citing **Campbell v. Anderson Cty.**, 695 F.Supp.2d 764, 778 (E.D. Tenn. 2010)). Recently, this Court reaffirmed the principle that even where a complaint couches the claims contained therein as negligent training and supervision claims, if the gravamen of the claim involves a violation of civil rights, then immunity is preserved. *See* **Cochran v. Town of Jonesborough**, No. E2018-01512-COA-R3-CV, 2019 WL 1399514, at \*7 (Tenn. Ct. App. Mar. 27, 2019) ("[I]n order to determine whether immunity bars Appellant's claim, we must determine 'the substantial point, the real purpose, or the object' of his action.").

From our review, the gravamen of Ms. Merolla's claim against Wilson County is that the jail officers exerted excessive force on her given the circumstances. Much of the testimony at trial centered on whether the shackling of Ms. Merolla was authorized under Wilson County's own policies or, instead, whether less force should have been utilized.[9]

---

[9] Other testimony focused on the refusal to allow Ms. Merolla to take her diabetes medication. This Court has previously held that claims involving whether a jail provided medical care compliant with the standard of care are governed by the Tennessee Health Care Liability Act ("THCLA") and all of its attendant procedural requirements. *See* **Estate of Bradley v. Hamilton Cty.**, No. E2014-02215-COA-R3-CV, 2015 WL 9946266, at \*6 (Tenn. Ct. App. Aug. 21, 2015) (holding that while a claim that a jail provided no access to medical care is not governed by the THCLA, a claim that the care provided was

Moreover, Ms. Merolla continually insinuated that the action taken against her was punitive in nature to stop her complaints and not based on any need to prevent self-harm. Ms. Merolla further appears to contend that following the shackling, the guards were indifferent to the suffering as evidenced by their decision to allow Ms. Merolla to remain in an uncomfortable position for a number of hours.[10] Likewise, in her appellate brief, Ms. Merolla "is emphatic" in her claim that she was "mistreated by the officers because of her accent, and because of her refusal to remain quiet." Ms. Merolla also characterizes the jailer's behavior as a "decision to punish Ms. Merolla." Clearly, the gravamen of these allegations is that the officers inappropriately punished Ms. Merolla for her behavior and thereafter were indifferent to her suffering, causing physical and emotional injuries.

In our view, "the substantial point" of Ms. Merolla's claim therefore involves violations of civil rights, regardless of Ms. Merolla's insistence that the conduct was merely negligent. *See* Tenn. Code Ann. § 29-20-205 (removing immunity for the negligence of government employees except where the negligence arises out of, *inter alia*, civil rights); *cf.* **Limbaugh**, 59 S.W.3d at 84 (holding that a governmental entity may be liable for the harm resulting from an un-enumerated intentional tort where the governmental entity was negligent in allowing that intentional conduct to take place). For example, in **Dillingham v. Millsaps**, 809 F.Supp.2d 820, 852 (E.D. Tenn. 2011), the United Stated District Court for the Eastern District of Tennessee dismissed a purported negligence claim on the basis of immunity where the allegations stemmed from "nothing more than [a] civil rights claim[,]" and the negligence claim was "still based upon an underlying claim of 'excessive force.'" In other cases, the United States Supreme Court has held that claims of injuries to prisoners related to the deliberate indifference of guards and excessive punishments are governed by the Eighth Amendment to the United States Constitution. *See* **Farmer v. Brennan**, 511 U.S. 825, 828, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 811 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment. . . . In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners."). Thus, these claims fall within the ambit of "civil rights" under section 29-20-205(2). *See* **Jackson**, 2011 WL 1049804, at *6 (quoting **Bettis v. Pearson**, No. 1:04-CV-112, 2007 WL 2426404, at *11 (E.D. Tenn. Aug. 21, 2007)) (construing the term "civil rights" as

---

negligent is governed by the THCLA and its attendant procedural requirements). The evidence shows that Ms. Merolla was indeed provided access to medical professionals during her brief tenure under the control of the Wilson County Jail. Moreover, there is no dispute that the THCLA procedural requirements were not met in this case or that Ms. Merolla did not file suit against the independent medical providers involved in this case.

[10] In her complaint, Ms. Merolla alleged that she was shackled for up to eight hours. At trial, the evidence undisputedly showed that Ms. Merolla was shackled for approximately three hours. Even after this evidence was submitted, Ms. Merolla again claimed a significantly longer period of time and was corrected by her own counsel.

"'including claims arising under the federal civil rights laws and the U.S. Constitution.'"); *see also* **Campbell**, 695 F.Supp.2d at 778 ("This court construes the term 'civil rights' in § 29-20-205(2) as meaning and including claims arising under the federal civil rights laws, e.g., 42 U.S.C. § 1983 and the United States Constitution.").

Indeed, even Ms. Merolla admits in her brief that "a thin line" exists between her purported negligence claim and a civil rights claim. However, under the GTLA any ambiguity as to whether immunity exists must be resolved in favor of retaining immunity. *See **Hughes v. Metro. Gov't of Nashville & Davidson Cty.***, 340 S.W.3d 352, 361 (Tenn. 2011) (quoting **McMahon v. United States**, 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951) ("[S]tatutes which waive immunity of the [governmental entity] from suit are to be construed strictly in favor of the sovereign.")). As such, we conclude that the claims raised by Ms. Merolla in this case arise from violations of her civil rights. Pursuant to Tennessee Code Annotated section 29-20-205(2), Wilson County retains sovereign immunity for these claims. As such, the trial court did not err in dismissing them.[11]

## II.    Tennessee Code Annotated section 8-8-302

Rather than substantively address the civil rights exception to the GTLA's waiver of immunity, Ms. Merolla has chosen to instead argue that liability should nevertheless attach under a separate statute, Tennessee Code Annotated section 8-8-302. Wilson County argues, however, that this statute does not apply to the actions at issue in this case.

> We begin with the language of the statute at issue:
> Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

Tenn. Code Ann. § 8-8-302. Tennessee Code Annotated section 8-8-303 provides a waiver of sovereign immunity for claims raised pursuant to section 8-8-302. Tenn. Code Ann. § 8-8-302(a) ("The governmental immunity of the county in which the sheriff serves is waived for purposes of § 8-8-302, but to an extent not in excess of the amount of the surety bond executed for that county's sheriff pursuant to § 8-8-103."). In interpreting this statutory scheme, the Tennessee Supreme Court has held that it applies to non-negligent conduct of deputies and that these claims are generally not barred by

---

[11] We note that the trial court was somewhat equivocal as to whether all of Ms. Merolla's claims were barred by sovereign immunity, noting that "[t]o the extent [Ms. Merolla] alleged violations of her civil rights," immunity applied. We, however, may affirm on different grounds than that relied upon by the trial court. *See **City of Brentwood v. Metro. Bd. of Zoning Appeals***, 149 S.W.3d 49, 60 (Tenn. Ct. App. 2004*)*. Moreover, we address any remaining claims, *infra*.

GTLA immunity. *See* **Jenkins v. Loudon Cty.**, 736 S.W.2d 603, 609 (Tenn. 1987), *abrogated in part by* **Limbaugh v. Coffee Med. Ctr.**, 59 S.W.3d 73 (Tenn. 2001) ("Actions for the non-negligent misconduct of deputies do not "aris[e] pursuant to" the GTLA, T.C.A. § 29-20-104(b), and may therefore be covered by T.C.A. § 8-8-301, et seq., in the appropriate cases.");[12] *see also* **Swanson v. Knox Cty.**, No. E2007-00871-COA-R3-CV, 2007 WL 4117259, at *4 (Tenn. Ct. App. Nov. 20, 2007) (describing the holding in **Jenkins** as a ruling "that the GTLA supercedes [sic] Tenn. Code Ann. §§ 8-8-301, et seq., as it relates to actions based on negligence, but Tenn. Code Ann. §§ 8-8-301, et seq., controls as to suits for misconduct of officers"); *cf.* **Davis v. Hardin Cty., Tennessee**, No. 99-1218, 2002 WL 1397276, at *6 (W.D. Tenn. May 22, 2002) (noting that "[a]lthough **Limbaugh** abrogated **Jenkins**, it clearly did not affect the holding in **Jenkins** concerning § 8-8-302," but holding that because a negligence action against a governmental entity related to the intentional tort of assault and battery is allowed under the GTLA following the **Limbaugh** decision, there can be no claim of this type under section 8-8-302).

Wilson County contends, however, that the statute does not apply to the actions of "jailers," i.e., corrections officers. In support, Wilson County cites a number of federal cases that have generally held that the term "deputy" in section 8-8-302 does not extend to jailers. *See, e.g.,* **Lundy v. Knox Cty.**, Tenn., No. 3:13-CV-588-TAV-HBG, 2014 WL 1491235, at *4 (E.D. Tenn. Apr. 15, 2014) ("[T]he alleged acts of the jail personnel in plaintiff's complaint do not fall under the limited immunity waiver of Tenn. Code Ann. § 8-8-302 because jail personnel are not considered sheriffs' deputies under the statute."); **Davis v. Hardin Cty., Tennessee**, No. 99-1218, 2002 WL 1397276, at *3 (W.D. Tenn. May 22, 2002) ("For numerous reasons, the court is convinced that the courts of Tennessee would find that a jailer is not a deputy for the purposes of § 8-8-302.").

We must note, however, that the Tennessee General Assembly chose to amend this statutory scheme in 2017. As such, Tennessee Code Annotated section 8-8-301 now expressly states that "[a]s used in this section and § 8-8-302, 'deputy' includes a jailer appointed by a sheriff pursuant to § 41-4-101." Were this amendment to apply to this case, there could be no dispute that Ms. Merolla's claim would not be barred by the fact that the actions at issue were committed by jailers rather than deputies. The 2017 amendment to section 8-8-301, however, is simply not applicable to this case. Indeed, despite presumed knowledge of the prior interpretations of this act, **Lavin v. Jordan**, 16 S.W.3d 362, 368 (Tenn. 2000), the General Assembly chose to apply this amendment only "to acts and failures to act on or after" the effective date of the statute, i.e., May 2, 2017. 2017 Tenn. Laws Pub. Ch. 261 (S.B. 1060). There is no dispute that Ms. Merolla's claims involve acts that occurred in 2012. Moreover, this Court has described as a "cardinal rule of construction" that we consider a statute only in its present form unless

---

[12] **Jenkins** specifically involves claims arising from violations of civil rights, the same types of claims at issue in this case, as discussed *supra*. **Id.** at 604.

doing otherwise would result in a manifest injustice. ***Loftin v. Langsdon***, 813 S.W.2d 475, 480 (Tenn. Ct. App. 1991) ("This Court will not depart from the cardinal rule of construction that the interpretation of statutes does not extend to amendment of legislation. This statute, like all statutes, must be applied in its present form unless doing so would result in 'manifest injustice.'") (citation omitted). As such, we consider the statute as it existed when Ms. Merolla's cause of action accrued.

Although the decisions of federal courts are not binding on this Court, see ***Goree v. United Parcel Serv., Inc.***, 490 S.W.3d 413, 437 (Tenn. Ct. App. 2015), we find the reasoning utilized by the federal courts applying the applicable version of section 8-8-302 highly persuasive. As the Court in ***Davis*** explained:

> In approaching this issue, it should first be noted that the court is dealing with a statute waiving governmental immunity. Tennessee courts have traditionally treated statutes which waive sovereign immunity with great deference to the language of the statute. Quoting from the Tennessee Supreme Court in reference to the GTLA:
>
>> The limited waiver of governmental immunity provided for in the Act is in clear derogation of the common law. Generally, statutes in derogation of the common law are to be strictly construed and confined to their express terms, and that rule of construction has been expressly incorporated into the Act. . . .
>
> ***Doyle v. Frost***, 49 S.W.3d 853, 858 (Tenn. 2001) (quoting ***Ezell v. Cockrell***, 902 S.W.2d 394, 399 (Tenn. 1995)). Since § 8-8-302 similarly modifies the common law, it would be strictly construed by the Tennessee Supreme Court. Under a strict construction of § 8-8-302 the term deputy would not be extended to cover jailers.
>
> Another reason Tennessee courts are likely to distinguish between deputies and jailers is because the legislature has made that same distinction. Other provisions of the Tennessee Code reinforce the view that the Tennessee legislature distinguishes between the terms "deputy" and "jailer". The best indication of this is provided by Tennessee Code Annotated § 8-8-201(3) which states that the sheriff of the county shall "[t]ake charge and custody of the jail of the sheriff's county, and of the prisoners therein; receive those lawfully committed, and keep them personally, or by deputies *or jailer*, . . . ." Tenn. Code Ann. § 8-8-201(3) (Supp. 2001) (emphasis added). Yet another indication is provided at Tennessee Code Annotated § 40-11-128, where the legislature elected to list jailers and deputies separately in enumerating those disqualified from serving as bonds men. *See* Tenn. Code Ann. § 40-11-128. Given these

- 10 -

listings of "deputies" and "jailers" separately, it is clear that the Tennessee legislature draws a distinction between the two terms.

The interaction of the GTLA and § 8-8-302 also provides ample basis for concluding that the Tennessee legislature distinguishes between the liability for jailers and deputies. The Tennessee legislature passed § 8-8-302 in 1972. The section is very inclusive in terms of the actions which it potentially covers-essentially it allows a cause of action for any wrongful action of a deputy. The next year the Tennessee legislature passed the GTLA. Although the GTLA, in comparison to § 8-8-302, made governmental entities liable for the actions of a larger selection of employees, the actions which could create liability were decidedly narrower. Thus, [the] GTLA was broader than § 8-8-302 in that the actions of more employees could subject a governmental entity to a cause of action, but narrower in that the causes of action which the governmental entity could be sued for were fewer. From the interplay of these two statutes, one could conclude that the Tennessee legislature intended to provide government liability for the actions of jailers governed by the narrower liability of the GTLA and to reserve the heightened liability of the county in § 8-8-302 for actions of deputies.

Further, there are considerable logical differences between deputies and jailers which support the legislature's distinction between the two. Deputies, generally speaking, are better trained and are given duties which bring them in closer contact with the general public. Jailers, on the other hand, are often provided less training and are given duties which are normally conducted within the confines of the county jail. These two jobs are vastly different in nature and the potential liability of a county for the actions of agents holding these positions is likewise different. Thus, it is not surprising that the Tennessee Legislature decided to differentiate these positions for the purpose of governmental immunity.

***Davis***, 2002 WL 1397276, at *3–*4. In the present case, Ms. Merolla chose not to file a reply brief or to make any argument about the application of section 8-8-302 to her claims related to the actions of jailers. Indeed, the minimal way that this issue was raised in the trial court and in this Court implicates the doctrine of waiver.

Generally, when arguments are not raised in the trial court, they may not be raised for the first time on appeal. ***Fayne v. Vincent***, 301 S.W.3d 162, 171 (Tenn. 2009). The party invoking waiver must show, however, that the issue was in fact not raised in the trial court. ***Id.*** at 171 ("While we endorse the continuing vitality and validity of the principle that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court, we also hold that the party invoking this principle has the burden of demonstrating that the issue sought to be precluded was, in fact, not raised in the trial court."). Here, Ms. Merolla raised her claim under section 8-8-301, et. seq. in her

complaint in two places. First, in her introductory paragraph, Ms. Merolla states her intention to raise an alternative claim under section 8-8-301. Later, Ms. Merolla's complaint states that she "asserts a claim for damages, based upon the conduct described above, pursuant to [section] 8-8-301, which permits a direct action against counties when their Sheriff's Deputies engage in conduct which causes foreseeable and actual harm to a person held under custodial circumstances such as the Plaintiff."

A claim under this sections 8-8-301 and -302 is not mentioned in any other pleadings or filings by Ms. Merolla. Instead, it appears that Ms. Merolla effectively abandoned this claim. Indeed, in her pre-trial brief, Ms. Merolla specifically states that a "decision" was made not to claim that her injuries resulted from "willful, deliberate," i.e., non-negligent, conduct because the behavior of the jail staff was "more the product of benign ignorance, than any willful . . . attempt to harm Ms. Merolla."[13] Thus, Ms. Merolla's pre-trial brief makes clear that she is claiming only that a "negligent act" occurred, rather than non-negligent conduct. Additionally, when Wilson County lodged a motion for involuntary dismissal at the close of Ms. Merolla's proof regarding GTLA immunity, Ms. Merolla offered no argument that her claim was actually based on section 8-8-302, rather than the GTLA. Indeed, once again, counsel for Ms. Merolla explained that her claim was that there was a "negligent, not intentional decision to hurt her." As a result, the trial court's oral ruling and written order understandably make no mention of a claim under section 8-8-302.

Ms. Merolla does, however, designate liability under section 8-8-302 as an issue in her brief. The argument on this issue, however, is sparse at best. Specifically, other than citing the language of section 8-8-302, the totality of Ms. Merolla's argument as to liability under this statute is as follows:

> *Jenkins v. Loudon County*, 736 S.W.2d 602 (Tenn. 1987) clarifies that actions for non-negligent misconduct of a deputy would not be covered under T.C.A. § 29-20-104(b) (The Tennessee Governmental Tort Liability Act) and would therefore be covered by the above referenced statute where the conduct rises to the level of willful or deliberate indifference, as opposed to mere negligence. *Also see*, *Doe v. Sullivan County*, 956 F.2d 545 (6th Cir. Tenn. 1992). Certainly, the facts [at issue in this case] could be reasonably placed into either category. The broad scope of the

---

[13] This "decision" proved misguided as, discussed *infra*, Ms. Merolla's purported negligence claim is in fact barred by GTLA immunity because it arises from civil rights violations. However, "the plaintiff is the master of his complaint," *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 515 (6th Cir. 2003), and this Court is limited to correcting the trial court's errors rather than steering the plaintiff's case toward the cognizable claims that had been abandoned by the litigant. *Cf. McDonough v. McDonough*, 499 S.W.3d 401, 405 (Tenn. Ct. App. 2016) (quoting *Mosley v. State*, 475 S.W.3d 767, 774 (Tenn. Ct. App. 2015)) ("Importantly, '[t]his Court functions as an error-correcting intermediate appellate court.'" (some internal citations omitted)).

application of the statute is discussed in ***Buchanan v. Williams***, 434 F. Supp. 2d 521 (M.D. Tenn. 2006).

Thus, in a rather conclusory fashion, Ms. Merolla appears to change her theory regarding the acts or omissions at issue in this case. Arguments may be waived on appeal not only through the failure to designate the argument as an issue or the complete failure to brief the argument, but also by raising the argument in only a "skeletal" fashion. *See **Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.***, 301 S.W.3d 603, 615 (Tenn. 2010) ("[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."). Moreover, "'[i]t is well-settled that an appellant is bound by the evidentiary theory set forth [in the trial court], and may not change theories on appeal." ***Wells Fargo Bank, N.A. v. Dorris***, 556 S.W.3d 745, 759 (Tenn. Ct. App. 2017), *perm. app. denied* (Tenn. May 17, 2018) (quoting ***State v. Alder***, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001)). From our review, Ms. Merolla's apparent abandonment of her claim under section 8-8-302 in the trial court and the negligible manner in which this argument was addressed both in the trial court and on appeal arguably constitute waiver.

In the absence of sufficient argument on this issue, we are inclined to agree with the federal courts that section 8-8-302 as it existed at the time of the events in this case does not create a waiver of immunity for jailers. Indeed, Ms. Merolla has cited no caselaw that specifically addressed this argument and come to an opposite conclusion. *Cf.* ***Karnes v. Madison Cty.***, No. W2009-02476-COA-R3-CV, 2010 WL 3716458, at \*1 (Tenn. Ct. App. Sept. 23, 2010) (noting that a section 8-8-302 claim related to the inaction of jail employees was dismissed by agreement); ***Linkous v. Lane***, 276 S.W.3d 917, 920 (Tenn. Ct. App. 2008) (noting that the plaintiff's claim under section 8-8-302 for the actions of a jailer was dismissed in the trial court without stating the basis of the dismissal and noting that such claim was not appealed); ***Corder v. Metro. Gov't of Nashville & Davidson Cty.***, Tenn., 852 S.W.2d 910 (Tenn. Ct. App. 1992) (involving a claim under section 8-8-302 related to the actions of a correctional officer, but dismissing the claim on the basis that the officer was not on duty at the time of the misconduct without any discussion of whether the officer was a deputy under the statute). As such, we agree with the district court's conclusion that "deputy" as used in section 8-8-302 did not include jailers prior to the 2017 amendment. *See **Davis***, 2002 WL 1397276, at \*3–\*4. Here, the alleged bad actors in this case were jailers or corrections officers rather than deputies.[14] As such, section 8-8-302 did not remove Wilson County's immunity for the claims at issue and Ms. Merolla's claim under section 8-8-302 must fail as a matter of

---

[14] When asked their jobs and titles at trial, for example, none of the jailers testified that they are Sheriff's Deputies. Ms. Merolla again points to no evidence and offers no argument to the contrary in this appeal. *See* Tenn. R. App. P. 27(a)(7) (requiring the argument of the appellant to include the contentions of the appellant with appropriate references to the record). Although this case does include some actions by Sheriff's deputies, who arrested Ms. Merolla and transported her to the Wilson County Jail, no misconduct is alleged against these individuals.

law. *Cf.* **Lucas v. State**, 141 S.W.3d 121, 127 (Tenn. Ct. App. 2004) (citing **Memphis v. Kimbrough**, 59 Tenn. 133 (Tenn. 1873)) ("Because of sovereign immunity the entity was not liable in respondeat superior for the acts or omissions of its agents, servants, or employees, except in cases where such immunity was modified by statute or the entity was exercising proprietary functions.").

Even assuming, arguendo, that this claim was not waived, not barred by GTLA immunity, and that liability may attach for the actions of jailers, we must conclude that Ms. Merolla was not entitled to judgment in her favor on this claim. Here, the trial court made extensive oral findings with regard to Ms. Merolla's purported negligence claim. These findings also preclude liability under section 8-8-302. Specifically, the trial court found that Ms. Merolla "was treated fairly [and that Wilson County] took reasonable precautions." With regard to the alleged failure to administer Ms. Merolla's medication, the trial court specifically found that the jailers' actions were "appropriate" under the circumstances, including issues involving the introduction of illegal drugs into the jail and the delegation of medical decisions to medical staff, rather than jailers. Finally, the trial court found that "[t]here [was] absolutely no proof whatsoever that [Ms. Merolla] was, quote, tortured." Rather, the trial court found that any alleged harm was caused by Ms. Merolla's own actions and the scuffle with her son-in-law.

The evidence in the record does not preponderate against these findings. Importantly, the trial court expressly found that Ms. Merolla lacked credibility. As explained by our supreme court,

> Unlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary.

**Wells v. Tennessee Bd. of Regents**, 9 S.W.3d 779, 783 (Tenn. 1999). Ms. Merolla has pointed to no evidence to rebut the trial court's credibility findings and we discern none in the record; on the contrary, Ms. Merolla's own admissions of embellishments to serve her own purposes fully supports the trial court's finding that she lacked credibility. As such, where a dispute exists between Ms. Merolla's version of events and the evidence presented by the jailers or the nurse on duty, we will generally credit the testimony provided on behalf of Wilson County. Thus, for example, we simply do not credit Ms. Merolla's claim that she was allowed to soil herself due to the indifference of the jailers.

Moreover, we agree with the trial court's finding that Ms. Merolla failed to present sufficient evidence that she was hogtied in violation of the Wilson County Policies and Procedures. As previously discussed, the Wilson County jailers testified to their

understanding that the shackling that Ms. Merolla experienced did not constitute hogtying. Ms. Merolla offered no competent proof to rebut these officer's definitions. Moreover, no Tennessee case has ever defined this term. *Webster's New World College Dictionary* defines the term, broadly, as "to tie . . . the hands and feet so as to make incapable of effective action." *Webster's New World College Dictionary* 692 (5th ed. 2014). In contrast, the United States Court of Appeals for the Tenth Circuit defines the term more specifically as "binding of the ankles to the wrists, behind the back, with 12 inches or less of separation." *Cruz v. City of Laramie*, 239 F.3d 1183, 1188 (10th Cir. 2001). Here, there can be no dispute that the shackling that occurred did not meet the Tenth Circuit's definition of hogtying. *Id.* Moreover, Ms. Merolla's own testimony was that she was limited in her movements but not incapable of movement. *Webster's New World College Dictionary* at 692. In the absence of any competent proof to the contrary, we must conclude that Ms. Merolla failed to show that Wilson County jailers violated the Wilson County Jail Policies prohibiting hogtying in this case.

Ms. Merolla also makes much of the fact that no video evidence was presented as to her behavior prior to becoming shackled; the undisputed evidence in the record, however, is that this episode was simply not recorded. Nothing in the Wilson County Jail Policies required the jailers to record the behavior that led to the use of restraints. Moreover, in the absence of other proof and in light of Ms. Merolla's lack of credibility, it was therefore appropriate to credit the testimony of the Wilson County employees that the shackling of Ms. Merolla was appropriate under the circumstances to prevent her from causing harm to herself and therefore complied with all applicable policies.

There is also no dispute that Ms. Merolla was seen by medical professionals, both by being allowed to go to the hospital prior to being transported to jail and by being seen by the Southern Health Partners nurse during her overnight stay at the jail. *See Estate of Bradley*, 2015 WL 9946266, at \*6. Moreover, Ms. Merolla's claim that the jail failed to provide her a mental health screening is undermined by her own failure to disclose her mental health issues on her intake form. Under the totality of the circumstances, Ms. Merolla simply failed to prove that the Wilson County jailers committed any non-negligent misconduct for which liability could attach under section 8-8-302.

In sum, Ms. Merolla's negligence claim is barred by GTLA immunity where the purported negligence claims at issue arise from civil rights violations. Ms. Merolla's claim under section 8-8-802 also fails due to a combination of waiver, that her claims against jailers are not cognizable under the applicable version of 8-8-302, and that the preponderance of the evidence does not support a finding that Wilson County jailers engaged in any non-negligent misconduct. As such, the trial court's ruling is affirmed.

III. **Expert Testimony of Captain Whitefield**

Finally, Ms. Merolla contends that the trial court abused its discretion in qualifying Captain Whitefield as an expert. To the extent that this case was resolved as a matter of law with regard to GTLA immunity and the applicability of section 8-8-302, this issue is pretermitted. Because we have nevertheless considered the facts in support of Ms. Merolla's claims *supra*, we will briefly address this issue.

Issues related to the admission or exclusion of evidence, including the admission or exclusion of expert testimony, are reviewed for an abuse of discretion. ***Regions Bank v. Thomas***, 532 S.W.3d 330, 336 (Tenn. 2017). "An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision." ***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010) (citing ***State v. Lewis,*** 235 S.W.3d 136, 141 (Tenn. 2007)).

Here, Ms. Merolla has not shown that the trial court abused its discretion in allowing Captain Whitefield to testify as an expert regarding the use of force. Captain Whitefield's testimony and expert disclosure indicate that he has more than ten years of experience in the field of corrections and has participated in approximately sixty to eighty hours of training per year concerning different topics in corrections. Captain Whitefield has both participated in and taught classes specifically concerning the use of force. In addition, Captain Whitefield was one of two officers who worked with the United States Department of Justice to draft the Wilson County Jail Policies and Procedures.

In determining whether a proffered witness is qualified as an expert, "the trial court must first make a determination that the witness is qualified by knowledge, skill, experience, training, or education to express an opinion within the limits of the expert's expertise." ***State v. Stevens***, 78 S.W.3d 817, 834 (Tenn. 2002) (citing Tenn. R. Evid. 702). "The determinative factor is whether the witness's qualifications authorize him or her to give an informed opinion on the subject at issue." ***Id.*** Here, Captain Whitefield's experience and training make him fully qualified to give his opinion regarding the use of force and compliance with the Wilson County Policies and Procedures. Ms. Merolla makes much of the fact that Captain Whitefield was not aware of recent orders in federal court concerning jails in other counties. These orders have no bearing on Captain Whitefield's qualifications; if anything, these issues go to the weight of his testimony rather than admissibility.[15] *See* ***Shipley v. Williams***, 350 S.W.3d 527, 551 (Tenn. 2011) "Once the minimum requirements [regarding the competency of an expert] are met, any questions the trial court may have about the extent of the witness's knowledge, skill, experience, training, or education pertain only to the weight of the testimony, not to its

---

[15] Ms. Merolla also takes issue with Captain Whitefield's testimony regarding the pain that was caused by the shackling as outside of his expertise, but then immediately states that Captain Whitefield's "'opinion' on that is not actually expressed." This argument simply lacks merit.

admissibility."). After considering the entire record, we conclude that the trial court did not abuse its discretion in allowing Captain Whitefield to testify as an expert in this case.

### CONCLUSION

The judgment of the Circuit Court of Wilson County is affirmed. Costs of this appeal are taxed to the Appellant Cheryl Merolla, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE